STATE OF NORTH CAROLINA v. JAMES WEATHERS

No. 404PA93

(Filed 30 December 1994)

**1. Criminal Law § 301 (NCI4th)— murder and failure to appear charges—joinder for trial—harmless error**

The trial court erred by joining for trial a 1989 murder charge and a 1991 failure to appear for the murder trial charge because those charges do not arise out of the same transaction or occurrence. However, the error was harmless in light of the fact that defendant's guilty plea to the failure to appear charge is being vacated and the fact that defendant's failure to appear would have been admissible in the murder trial to show flight. N.C.G.S. § 15A-926(a).

**Am Jur 2d, Actions § 159.5; Criminal Law § 20.**

**2. Evidence and Witnesses § 308 (NCI4th)— acts of prostitution—defendant's possession of metal pipe—more probative than prejudicial**

A witness's testimony which described acts of prostitution between the witness and defendant and her finding a metal pipe under defendant's pillow a month before the death of the victim, a known prostitute, was properly admitted in defendant's murder trial to show that the pipe was in defendant's bedroom in reasonable proximity to the time of the victim's death where other evidence tended to show that the victim was killed by a blunt object, such as a pipe, and since defendant's confession indicated that he had thrown a pipe away prior to the victim's death. Furthermore, the trial court did not err by finding that this testimony was more probative than prejudicial under the balancing test of Rule 403. N.C.G.S. § 8C-1, Rules 403 and 404(b).

**Am Jur 2d, Evidence §§ 452 et seq.**

**3. Evidence and Witnesses § 897 (NCI4th)— admission of search warrant—no plain error**

The trial court did not commit plain error by admitting into evidence in a first-degree murder trial the search warrant which authorized a search of defendant's home where defendant failed to object to the admission of the warrant; defense counsel responded negatively when the trial court inquired whether there were any objections to the warrant; the record suggests that the contents of the warrant were neither read to the jury nor passed to it for review; and the claimed error was not so fundamental that justice could not have been served.

**Am Jur 2d, Evidence § 662.**

**Written recitals or statements as within rule excluding hearsay. 10 ALR2d 1035.**

**4. Homicide § 254 (NCI4th)— first-degree murder—sufficient evidence of premeditation and deliberation**

The State's evidence was sufficient for the jury to find that defendant committed a homicide with premeditation and deliberation so as to support his conviction for first-degree murder where it tended to show that the victim, a known prostitute, was killed in defendant's bedroom; the victim bled to death as a result of seven lacerations to the posterior scalp caused by a blunt instrument such as a pipe; a metal pipe was seen under defendant's pillow a month before the killing; a lack of provocation by the victim was shown by evidence that defendant's bedroom did not appear to have been the scene of a fight, defendant was not injured, and defendant did not mention any provocation in his statements to law officers; defendant told officers that he went out in his car, picked up the victim, and brought her back to his house, where he had the murder weapon, at a time when he knew they would be alone; defendant went to great lengths to conceal the murder by disposing of the body and destroying or hiding evidence such as the metal pipe, the sheets and the mattress; and defendant exhibited an uncaring attitude toward the victim by dumping her nude body by the roadside.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.

## 5. Searches and Seizures § 68 (NCI4th)— search of defendant's home—consent by stepdaughter

A search of defendant's home based on the consent of defendant's stepdaughter was lawful, and the trial court properly denied defendant's motion to suppress evidence discovered during the search, where the evidence supported the trial court's determination that the stepdaughter was a resident of the premises and thus had the authority to consent to a search of the house and bedroom she shared with defendant.

Am Jur 2d, Searches and Seizures § 92.

Authority to consent for another to search or seizure. 31 ALR2d 1078.

Admissibility of evidence discovered in search of adult defendant's property or residence authorized by defendant's minor child—state cases. 99 ALR3d 598.

Admissibility of evidence discovered in search of defendant's property or residence authorized by defendant's adult relative other than spouse—state cases. 4 ALR4th 196.

## 6. Criminal Law § 145 (NCI4th)— acceptance of guilty plea—absence of factual basis

The trial court erred by accepting defendant's plea of guilty to failure to appear for trial because there was no factual basis for the plea where the clerk of court testified that defendant was present when his case was called for trial, and no evidence contradicted that testimony. N.C.G.S. § 15A-1022(c).

Am Jur 2d, Criminal Law § 489.

## 7. Homicide § 489 (NCI4th)— premeditation and deliberation—inference from nature of killing—propriety of instruction

There was ample evidence to support the trial court's instruction that the jury could rely on the nature of the killing to find premeditation and deliberation where the use of excessive force was shown by medical testimony that lacerations on the victim's body

were caused by blows from a blunt object consistent with a metal pipe, and the infliction of lethal wounds after the victim had fallen was shown by evidence of the excessive number of wounds and testimony that the victim's nose could have been fractured while the victim was face down and being struck in the back of the head.

**Am Jur 2d, Homicide § 501.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**8. Evidence and Witnesses § 1070 (NCI4th)— instruction on flight—sufficiency of evidence**

Although evidence that defendant was charged with failure to appear for his murder trial would not support an instruction on flight, the trial court's instruction on flight was supported by evidence that, after officers questioned defendant at his home, he agreed to show them where he had thrown away a metal pipe; while looking for the pipe at his workplace, defendant received permission from the officers to use the bathroom; defendant went inside the bathroom and "out the other door"; and defendant ran down some railroad tracks and hid until the police eventually found him.

**Am Jur 2d, Trial § 1184.**

**9. Criminal Law § 869 (NCI4th)— repetition of previous instruction—opportunity to be heard not required**

When the trial court is merely repeating a previous instruction, the reinstruction is not an "additional instruction" within the meaning of N.C.G.S. § 15A-1234(c), and the trial court is not required to give the parties an opportunity to be heard prior to the reinstruction.

**Am Jur 2d, Trial §§ 1108 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing life imprisonment entered by Kirby, J., at the 14 January 1993 Criminal Session of Superior Court, Gaston County. Defendant's petition for certiorari and motion to bypass the Court of

Appeals as to an additional judgment allowed by the Supreme Court 22 November 1993. Heard in the Supreme Court 12 September 1994.

*Michael F. Easley, Attorney General, by Michael S. Fox, Associate Attorney general, for the State.*

*Daniel K. Shatz for defendant.*

FRYE, JUSTICE.

Defendant was indicted for the murder of Gloria Pamela Carver. He was tried noncapitally by a jury, found guilty of murder in the first degree, and sentenced to a mandatory term of life imprisonment. Additionally, defendant was sentenced to one year in prison after pleading guilty to a charge of failure to appear at his murder trial on 11 March 1991. Defendant appealed his murder conviction to this Court. We allowed defendant's petition for certiorari and to bypass the Court of Appeals in order to review the judgment entered upon his plea of guilty to the charge of failure to appear for the trial of his murder case.

Defendant brings forward ten assignments of error. We find merit in one of defendant's assignments relating to the failure to appear charge. We find no prejudicial error in the assignments related to defendant's murder conviction.

The evidence presented at trial tended to show the following facts and circumstances. On 17 September 1989 the body of Pamela Gloria Carver, a known prostitute, was discovered. An investigation led police officers to defendant. Defendant was arrested on 20 September 1989.

An autopsy revealed that the victim had seven lacerations on her posterior scalp, a fractured nose, skull fractures, and bruises to the brain beneath the lacerations. Dr. Steven Tracy, a pathologist for Gaston Memorial Hospital, indicated that it was not possible to determine the order or the time span in which these wounds were inflicted. Dr. Tracy stated that in his opinion the cause of death was exsanguination, or bleeding to death.

Detective Mickey Cook testified that after he arrived at defendant's home, he and defendant went outside to talk. After defendant signed a consent form allowing officers to search his home, Detective Cook entered the home and conducted a search, while another officer searched the vehicles outside the premises. Additionally, Detec-

tive Cook testified that defendant's stepdaughter, Tammy Thomas, told him about a pipe that she kept around the house for protection. Defendant indicated that he had made the pipe but had thrown it away. Defendant and the officers went to look for the pipe in a trash bin at defendant's workplace.

Detective Douglas Ivey, the officer supervising the investigation, testified that while defendant was outside talking to Detective Cook he spoke with the people inside the house and determined that one of the individuals was defendant's stepdaughter, Tammy Thomas. Thomas informed Detective Ivey that she lived in the house with defendant and indicated that she did not mind showing him around. Detective Ivey observed blood splatters on the bedroom wall and on a laundry basket. Additionally, Detective Ivey observed that the mattress on the bed was new. When Detective Ivey began to look under the bed, Thomas stated that she did not feel comfortable with him looking there. Detective Ivey then stopped the search and returned to the living room. After conferring with the other detectives, Detective Ivey decided to seize the house and obtain a search warrant before continuing the search of defendant's home.

Thomas testified on voir dire that defendant is her stepfather and she frequently resided with him during 1988 and 1989. Thomas testified that she consented to Detective Ivey's search of the house. On cross-examination, Thomas clarified that while she agreed to let Detective Ivey look around, she expressed concern when he looked under the bed and pulled out a box and again when he pulled down the covers of the bed. Her concern was that Detective Ivey was doing more than just "looking around."

Melissa Hensley testified that she was a prostitute. She further testified that approximately one month before Ms. Carver's death defendant picked her up and took her to his house to engage in an act of prostitution. While defendant was in the bathroom, Hensley lay down on the bed and discovered a steel bar under the pillow. She placed the steel bar under the bed. When defendant noticed the bar was missing, he became angry. Hensley told defendant where she had put the pipe and asked him to "take her back uptown," which he did. On cross-examination, Hensley testified that defendant never struck her.

Officer Rick Powers testified that he was the officer who served the arrest warrant on defendant. Officer Powers read to the court the statement he took from defendant. Defendant stated that he had been

drinking since getting off work at 3:00 p.m. on 15 September 1989 and that he picked Ms. Carver up between 9:00 p.m. and 10:00 p.m. that evening. When they returned to his house, each of them had a beer and defendant took two green pills that a friend told him would "kick a beer." Defendant gave Ms. Carver fifty dollars and they engaged in sexual intercourse. Defendant stated:

> It was at this time that things became dazed. I do know that I hit Pam at this time, but I don't know why I did it. I don't know if I hit her with my fist or with an iron pipe that was on the bed when we lay down.

Defendant did not testify or offer any evidence at trial.

The jury was instructed that it could find defendant guilty of first-degree murder, guilty of second-degree murder, or not guilty. The jury returned a verdict of guilty of first-degree murder.

[1] In his first assignment of error, defendant contends that the trial court committed error by joining his 1989 murder charge and 1991 failure to appear charge, because the charges do not arise out of the same transaction or occurrence. We agree but find the error harmless.

Consolidation of criminal offenses for trial against one defendant is controlled by N.C.G.S. § 15A-926, which provides, in pertinent part:

> (a) Joinder of Offenses.—Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

N.C.G.S. § 15A-926(a) (1988). If the consolidated charges have a transactional connection, the decision to consolidate the charges is left to the "sound discretion of the trial judge and that ruling will not be disturbed on appeal absent an abuse of discretion." *State v. Silvia,* 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981).

While defendant was charged with murder and with failure to appear for his murder trial, this connection is insufficient to satisfy the transactional requirement of N.C.G.S. § 15A-926(a). We do not believe that these two crimes "are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C.G.S. § 15A-926(a) (1988). For this reason, the joinder of these two crimes constituted

error. However, the error was harmless in light of the fact that we are vacating defendant's guilty plea to the failure to appear charge. Furthermore, defendant would not have been prejudiced in the murder trial because evidence of his failure to appear would have been admissible as evidence of flight. Accordingly, we hold that joinder of the murder charge and the failure to appear charge was harmless error.

[2] Defendant's second assignment of error pertains to the admissibility of Melissa Hensley's testimony. Prior to Hensley's testimony, defendant objected to the portion of her testimony which described the acts of prostitution between Hensley and defendant and her finding a lead pipe under his pillow. After argument from both sides, the trial court denied defendant's objection and admitted Hensley's testimony. On appeal, defendant argues that the testimony was inadmissible under North Carolina Rules of Evidence, Rules 403 and 404(b). Defendant's argument is without merit.

Under Rule 404(b), evidence of other crimes, wrongs, or acts is admissible for purposes other than to prove the character of a person or to show that he acted in conformity therewith. Such other purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (1992). The aforementioned list is not exclusive and "the fact that evidence cannot be brought within a category does not necessarily mean that the evidence is inadmissible." *State v. DeLeonardo*, 315 N.C. 762, 770, 340 S.E.2d 350, 356 (1986). In *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990), this Court definitively stated that Rule 404(b) is a rule of *"inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 278-79, 389 S.E.2d at 54.

In the instant case, the trial court admitted Hensley's testimony to show that defendant had a metal pipe in his bedroom approximately one month prior to the death of the victim. Since the evidence tended to show that the victim was killed by the use of a blunt object, such as a pipe, and since defendant's confession indicated that he had thrown a pipe away prior to the victim's death, this evidence was clearly admissible to show that the pipe was in defendant's bedroom in reasonable proximity to the time of the victim's death.

We also reject defendant's contention that Ms. Hensley's testimony was more prejudicial than probative under the balancing test of Rule 403. Rule 403 of the North Carolina Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (1992). Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question is one of degree. Relevant evidence is properly admissible "*unless* the judge determines that it must be excluded, for instance, because of the risk of '*unfair* prejudice.' " *State v. Mercer,* 317 N.C. 87, 94, 343 S.E.2d 885, 889 (1986). " 'Unfair prejudice,' as used in Rule 403, means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.' " *DeLeonardo,* 315 N.C. at 772, 340 S.E.2d at 357 (quoting Commentary, N.C.G.S. § 8C-1 Rule 403 (Cumm. Supp. 1985)). We find nothing in the instant case to suggest that the jury's decision to convict defendant of first-degree murder was based primarily on the fact that he had sex with a prostitute or because he had a pipe under his pillow.

"In general, the exclusion of evidence under the balancing test of Rule 403 of the North Carolina Rules of Evidence is within the trial court's sound discretion." *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). We conclude that the trial court did not abuse its discretion in permitting Hensley's testimony.

[3] For his third assignment of error, defendant contends that the trial court committed plain error by admitting into evidence and passing to the jury the search warrant which authorized the search of defendant's home. Defendant asserts that the search warrant contained an inadmissible hearsay recitation by Detective Cook. Further, defendant argues that the search warrant amounted to an expression of judicial opinion by the magistrate because the warrant linked defendant to the victim's death. We find no error.

We have held that it is error to allow a search warrant and supporting affidavit to be admitted into evidence over defendant's objections. *State v. Edwards,* 315 N.C. 304, 306, 337 S.E.2d 508, 509 (1985). Here defendant did not object to the admission of the search warrant

into evidence. In addition, the State contends, and the record suggests, that the contents of the search warrant were neither read to the jury nor passed to it for review. Furthermore, when the court inquired of defense counsel if there were objections to the search warrant, counsel responded in the negative. Nevertheless, defendant urges this Court to review this assignment of error under the plain error rule adopted by this Court when considering instructional error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982)). This Court has applied the plain error rule to the admission of evidence. *State v. Black,* 308 N.C. 736, 741, 303 S.E.2d 804, 806 (1983). However, this is not the exceptional case where, after reviewing the entire record, it can be said that the claimed error is so fundamental that justice could not have been done. Thus, we reject this assignment of error.

[4] Defendant's next contention is that the trial court erred by denying defendant's motion to dismiss the charge of first-degree murder at the close of the State's case. At the close of the State's evidence, defendant moved to have the charge of first-degree murder dismissed on the grounds that the State had failed to present sufficient evidence as to each element of the charge and a jury could not find that defendant killed the victim with premeditation and deliberation based on the evidence presented. Defendant contends that the statement he gave to Detective Powers indicates that he was in a "dazed state" when the victim was killed, thus showing a lack of premeditation and deliberation.

Defendant contends that the only other source of evidence which might have shown premeditation and deliberation was the physical

evidence regarding the victim's wounds. Dr. Tracy testified that the victim bled to death as a result of seven lacerations to the posterior scalp caused by a blunt instrument. Dr. Tracy was unable to determine the time span or the sequence in which the blows were inflicted. Defendant contends that Dr. Tracy's testimony is insufficient to support a charge of premeditation and deliberation; thus, defendant's motion to dismiss should have been granted. We conclude that Dr. Tracy's testimony, when considered with the other evidence, is sufficient to show premeditation and deliberation.

In this case, defendant was convicted of first-degree murder. In defining first-degree murder and its elements, this Court has stated:

> "First degree murder is the unlawful killing of a human being with malice, premeditation and deliberation." *State v. Misenheimer*, 304 N.C. 108, 113, 282 S.E.2d 791, 795 (1981). Premeditation and deliberation generally must be established by circumstantial evidence, because they ordinarily " 'are not susceptible to proof by direct evidence.' " *Id.* (quoting *State v. Love*, 296 N.C. 194, 203, 250 S.E.2d 220, 226-27 (1978)). "Premeditation" means that the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing. *Id.* "Deliberation" means that the intent to kill was formed while the defendant was in a cool state of blood and not under the influence of a violent passion suddenly aroused by sufficient provocation. *Id.* In the context of determining the existence of deliberation, however, the term "cool state of blood" does not mean " 'an absence of passion and emotion.' " *Id.*

*State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991) (quoting *State v. Faust*, 254 N.C. 101, 108, 118 S.E.2d 769, 773, *cert. denied*, 308 U.S. 851, 7 L. Ed. 2d 49 (1961)).

In ruling on a motion to dismiss, the court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Premeditation and deliberation may be inferred from "lack of provocation on the part of the deceased." *Vause*, 328 N.C. at 238, 400 S.E.2d at 62; *cf. State v. Corne*, 303 N.C. 293, 297, 278 S.E.2d 221, 223 (1981) (killing not with premeditation and deliberation where "shooting was a sudden event, apparently brought on by some provocation on the part of the deceased"). In this case, the direct evidence indicates a lack of provocation from the victim; defendant's bedroom did not appear to have

been the scene of a fight, since nothing was damaged or broken. A lack of struggle was also evidenced by the absence of injury to defendant. Additionally, defendant did not mention any provocation in any of his statements to law enforcement officers.

Further, premeditation and deliberation may be inferred from "the conduct and statements of the defendant before and after the killing." *Vause*, 328 N.C. at 238, 400 S.E.2d at 62. In this case defendant stated that he went out in his car, picked up the victim, and brought her back to his house—where he had the murder weapon—at a time when he knew they would be alone. Defendant's conduct after the killing provides further evidence of premeditation and deliberation. Defendant went to great lengths to conceal the murder, including disposing of the body and destroying or hiding evidence such as the pipe, the sheets, and the mattress. Defendant's uncaring attitude about the victim, evidenced by killing her and then dumping her nude body by the roadside, could be considered by the jury in finding premeditation and deliberation. When viewed in the light most favorable to the State, the evidence presented was sufficient for the jury to find that defendant committed the homicide with premeditation and deliberation.

[5] In his fifth assignment of error defendant argues that the trial court erred by denying defendant's motion to suppress the evidence resulting from the officers' search of his home. Defendant contends that his state and federal constitutional right to be free from unreasonable searches and seizures was violated when Detective Ivey searched defendant's home based on consent given by Tammy Thomas, defendant's stepdaughter. Defendant argues that none of the evidence presented at trial suggests that Thomas had any authority, real or apparent, to allow a search of defendant's bedroom. Defendant's contention is without merit.

Generally, consent for a search can only be given by a person whose reasonable expectation of privacy may be invaded by the proposed search. There are often situations, however, where two or more persons share a reasonable expectation of privacy in the same place and, generally, either person may consent to the search. *See United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242 (1974). The trial court found, based on substantial evidence, that Tammy Thomas was a resident of the premises and, therefore, had the authority to

consent to a search of the house and bedroom which she shared with defendant. The trial court was correct in denying defendant's motion to suppress.

**[6]** Defendant's sixth and seventh assignments of error relate to defendant's failure to appear charge. In his seventh assignment of error, defendant contends that the trial judge erred by accepting his plea of guilty to failure to appear without any showing that there was a factual basis to support the plea. We agree.

A judge may not accept a defendant's guilty plea without first determining that there is a factual basis for the plea. N.C.G.S. § 15A-1022(c) (1988). In this case, the State called Jerri Queen, Clerk of Superior Court, Gaston County, as its only witness for the failure to appear charge. Queen explained that she maintains the court's criminal files and defendant's case was set for the 11 March 1991 trial calendar. The pertinent portion of Ms. Queen's testimony is as follows:

Q. [Prosecutor] And did James Weathers appear at the—for trial during the term?

A. [Ms. Queen] He did.

Q. And state whether or not he appeared in the courtroom when those matters were called for trial.

A. Yes, sir.

Q. And was there a subsequent order of arrest that was issued?

A. Yes, sir.

Queen's testimony shows that defendant was present when his case was called. No one testified that defendant was not present when his case was called for trial. There was no factual basis for defendant's guilty plea to the charge of failure to appear for trial; thus, it was error for the trial court to accept defendant's guilty plea. The guilty plea and the judgment based thereon are hereby vacated.

**[7]** For his eighth assignment of error, defendant argues that the trial court committed plain error by instructing the jury that it could rely on the nature of the killing to find premeditation and deliberation. Defendant contends that because there was no evidence presented about the amount of force required to inflict the victim's wounds, or

that any lethal blows were struck after the victim had fallen, the trial court's instruction allowed the jury to find premeditation and deliberation based on factors not supported by the evidence.

Defendant did not object to the trial court's instructions at trial. Thus, the instructions can be reviewed only for plain error. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375. Only in a "rare case" will an improper instruction "justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* at 661, 300 S.E.2d at 378.

In this case the trial court gave the following jury instruction:

Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by the victim, the conduct of the defendant before, during and after the killing, use of grossly excessive force, infliction of lethal wounds after the victim has [fallen], brutal or vicious circumstances of the killing, the manner in which—the means by which the killing was done.

This instruction is based on North Carolina Pattern Instructions— Criminal No. 206.10.

In *State v. Cummings*, the Court was presented with a claim similar to the one in this case. Noting that the instruction was delivered straight from pattern jury instructions, N.C.P.I.—Crim. 206.10, this Court stated that "[t]he elements listed are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation. It is not required that each of the listed elements be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation." *State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990). In *Cummings*, this Court found that there was sufficient evidence to support the instruction and rejected the defendant's argument.

Similarly, in this case there is ample evidence to support the court's instruction. There was testimony from Dr. Tracy which dispelled any argument that excessive force was not used. Dr. Tracy testified that the lacerations on the victim's body were caused by blows from a blunt object consistent with an iron pipe. The excessive number of wounds, and the testimony that the victim's nose could have been fractured while the victim was face down and being struck in the back of her head, constituted sufficient evidence for the jury to

find that lethal wounds were inflicted after the victim had fallen. The trial court correctly instructed the jury that it could rely on the nature of the killing to find premeditation and deliberation. As in *Cummings*, we reject this assignment of error.

**[8]** In his ninth assignment of error, defendant contends that the trial court committed plain error by instructing the jury on flight by defendant. Defendant argues that the State did not present any evidence that defendant fled.

Defendant contends that the fact that he was charged with failure to appear for the murder trial is not evidence supporting an instruction on flight. We agree. Defendant also argues that because he remained at his home, the site of the killing, until the officers came there to talk to him, there was no evidence of flight. We do not agree. The State's evidence tends to show that defendant disappeared while he was allegedly showing the investigating officers the pipe at his place of employment.

Furthermore, defendant's own statement corroborates the State's claim that he attempted to flee when it became obvious that the officers were finding evidence of his crime. After officers questioned defendant at his home, he agreed to show them where he had thrown away a pipe. While looking for the pipe outside his workplace, defendant asked the detectives if he could go around to the side of the building and use the bathroom. After receiving permission to go, defendant stated that he went inside to the bathroom and "just went out the other door." Defendant stated that he ran down the railroad tracks and hid until the police eventually found him. We find the evidence clearly sufficient to support a jury instruction on flight. Accordingly, we reject defendant's argument.

**[9]** In his final assignment of error, defendant argues that the trial court committed error by reinstructing the jury on premeditation without giving the parties an opportunity to be heard. After the jury began its deliberations, the jury returned with a question for the court. The jury asked, "Define premeditation, please, and does it have a time frame?" The trial court then responded by repeating a portion of its previous instruction and did not afford the parties an opportunity to be heard before reinstructing the jury.

N.C.G.S. § 15A-1234(c) addresses the issue of additional instructions to the jury. This section reads in pertinent part as follow:

(c) Before the judge gives *additional instructions,* he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard.

N.C.G.S. § 15A-1234(c) (1988) (emphasis added). This Court has not addressed this specific issue; however, the Court of Appeals has held that the requirements set forth in subsection (c) do not apply when the court merely repeats a previous instruction. *State v. Buchanan,* 108 N.C. App. 338, 340, 423 S.E.2d 819, 821 (1990). We agree with the Court of Appeals. As long as the trial court is merely repeating a previous instruction, it is not necessary for the judge to give the parties an opportunity to be heard prior to reinstruction. We find no merit in defendant's contention.

Finding merit in defendant's seventh assignment of error, we vacate defendant's guilty plea and the trial court's judgment on the failure to appear charge. In defendant's trial for murder, we find no prejudicial error. The result is:

91 CRS 8628—Failure to Appear—GUILTY PLEA AND JUDGMENT VACATED.

89 CRS 21617—First-Degree Murder—NO ERROR.