STATE OF NORTH CAROLINA v. RUSSELL EDWARD MANNING

No. COA99-661

(Filed 15 August 2000)

**1. Constitutional Law— double jeopardy—drug tax—trafficking convictions**

The trial court did not err by denying defendant's motion to dismiss trafficking in cocaine offenses on double jeopardy grounds because he had previously been assessed a controlled substance tax. It has recently been held that double jeopardy does not preclude criminal prosecution for violations of the Controlled Substances Act, despite prior entry of judgment for unpaid taxes on seized drugs. Additionally, defendant in this case was convicted on charges arising from the transportation, sale, and delivery of cocaine, while the tax levied involved the possession of cocaine.

**2. Criminal Law— severance of narcotics offenses—common pattern**

The trial court did not abuse its discretion by denying defendant's motions to sever various cocaine charges where the charges occurred within a six-month period and showed the same pattern of operation between defendant and an informant, indicating a common, continual method of transacting drug sales.

**3. Evidence— motion in limine—prior drug deals**

The trial court did not err in a cocaine prosecution by denying defendant's motion in limine to require that the State reveal those acts it intended to prove under N.C.G.S. § 8C-1, Rule 404(b) and those it would elicit under Rule 608(b), should defendant testify. The court ruled that defendant's prior drug deals could come in only if defendant opened the door by testifying that he had never dealt drugs; moreover, defendant did not make an offer of proof regarding his testimony and there is no evidence as to what his factual defense would have been.

**4. Evidence— audiotapes—intelligible**

The trial court did not abuse its discretion in a cocaine prosecution by admitting audiotapes which defendant contended were inaudible, unintelligible, and fragmented where the court did not find that the tapes were inaudible or unintelligible and no

STATE v. MANNING

[139 N.C. App. 454 (2000)]

juror interrupted when they were played to assert that they were inaudible or unclear.

## 5. Criminal Law— prosecution comment on audience noise— objection to informant's address—no mistrial

The trial court did not abuse its discretion in a cocaine prosecution by denying a defense motion for a mistrial based upon the prosecution's comments on noise from the audience and its objection to an informant being asked where he lived. There was no prejudice from the comments.

## 6. Discovery— narcotics trafficking—currency and serial number list—not available at trial—testimony admitted— not provided before trial

The trial court did not abuse its discretion by not declaring a mistrial in a cocaine prosecution where defendant was not provided information concerning the currency used in drug transactions during discovery because the currency and information concerning the currency had been used in other drug buys or was destroyed before trial, but the existence and use of the currency, the serial number list, and the photocopy were presented to the jury through testimony. These items were used to charge defendant, fell within N.C.G.S. § 15A-903(d), and should have been made available; however, there was no substantial and irreparable prejudice to defendant due to the overwhelming evidence against him.

## 7. Drugs— trafficking by transportation—running from arresting officer with cocaine in pocket

The trial court did not err by denying defendant's motion to dismiss the offense of trafficking in cocaine by transportation where the charge resulted from defendant running away from arresting officers while carrying 109 grams of cocaine just after he had sold an informant 449 grams.

Chief Judge EAGLES concurring.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from judgments entered 21 October 1998 by Judge Clifton W. Everett, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 27 March 2000.

STATE v. MANNING

[139 N.C. App. 454 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorney General David N. Kirkman, for the State.*

*W. Gregory Duke for defendant-appellant.*

HUNTER, Judge.

Defendant was convicted of four counts of trafficking in cocaine by transportation, three counts of trafficking in cocaine by sale, and three counts of trafficking in cocaine by delivery. We find no error.

The State's evidence at trial indicated that on 7 November 1996, 27 November 1996, 3 April 1997, and 6 May 1997, defendant sold cocaine to Edgar Lloyd Harrington, III ("Harrington"), who was an undercover agent for the North Carolina State Bureau of Investigation ("SBI") and was equipped with either a body transmitter or vehicle transmitter when each offense occurred. Harrington had formerly been charged with cocaine trafficking offenses.

During the time period when the offenses occurred, defendant resided in Pitt County on Clark's Neck Road, but also kept a trailer on Sticks Road. On 7 November 1996, Harrington went to defendant's trailer on Sticks Road and defendant drove into the woods, returning with a bag of cocaine. Harrington purchased just under two ounces of cocaine for $2,700.00. When Harrington left defendant's property, he drove down a long dirt path and met SBI agent Ken Bazemore ("Bazemore"). Before he turned over the evidence to Bazemore, Harrington opened the package and smelled the evidence to ensure that it was really cocaine.

On 27 November 1996, Harrington met Bazemore and arranged to meet the defendant. Harrington went to where the defendant was hunting, waited for approximately forty-five minutes while defendant was being located and was told to come back at 5:00 p.m. Harrington returned at that time with $3,200.00 in cash provided by the SBI. Harrington talked to defendant about purchasing two ounces of cocaine. Defendant then left but returned approximately forty-five minutes later with a clear plastic bag of cocaine. The exchange took place and Harrington left to meet SBI agent Bazemore.

Harrington next made arrangements to meet defendant on 3 April 1997. He first met defendant at defendant's home and arranged to make a purchase later in the day. The SBI provided Harrington with $2,100.00, and Harrington went to defendant's property on Sticks Road. Harrington was asked to follow the defendant, who jumped

over a ditch, went in the woods, and returned with a clear plastic bag containing cocaine. Harrington gave defendant the SBI money, and then took the bag to Bazemore.

On 5 May 1997, Harrington went to Sticks Road and told defendant he needed 500 grams of cocaine, which defendant told Harrington would cost $15,000.00. Defendant told Harrington to return to Sticks Road for the purchase the next day.

On 6 May 1997, Harrington, who had been given $15,000.00 by the SBI, met defendant at defendant's property on Sticks Road. Defendant asked Harrington to follow him down a dirt path, and he then pulled a bag out of an ammo box located in the woods and gave it to Harrington. Harrington gave defendant the money and drove away to meet Bazemore. At that point, defendant was apprehended by SBI agents, who found a clear plastic bag on his person containing cocaine.

On 6 May 1997, defendant was charged with four counts of trafficking in cocaine by transportation and four counts of trafficking in cocaine by possession. On 23 June 1997, true bills of indictment were returned against defendant for five counts of trafficking in cocaine by transportation, five counts of trafficking in cocaine by possession, four counts of trafficking in cocaine by sale, and four counts of trafficking in cocaine by delivery. Defendant was also charged by indictment with conspiracy to traffick in cocaine by possession, conspiracy to traffick in cocaine by transportation, conspiracy to traffick in cocaine by delivery, two counts of maintaining a dwelling place for the purpose of storing cocaine, and maintaining a vehicle for the purpose of storing cocaine.

On 7 May 1997, defendant was given a notice of controlled tax assessment for his possession of 141.75 grams and 567 grams of cocaine on 3 April 1997 and 6 May 1997, respectively. The tax assessment was $213,784.80, and the North Carolina Department of Revenue, in order to satisfy the controlled substance tax liability of defendant, seized all his personal property, including two automobiles. A judgment lien was also filed by the North Carolina Department of Revenue in the office of the Clerk of Court of Pitt County in the cumulative amount of the tax assessment.

Defendant was brought to trial during the 12 October 1998 criminal session of Pitt County Superior Court. The State elected not to prosecute defendant for any of the four counts of trafficking in

cocaine by possession. The trial court dismissed each of the conspiracy charges prior to trial. At the close of the State's evidence, the trial court dismissed the two counts of maintaining a dwelling place for the purpose of storing cocaine and the count of maintaining a vehicle for the purpose of storing cocaine.

The jury returned a verdict of not guilty for the counts alleged to have occurred on 27 November 1996. In regards to the counts alleged to have occurred on the other dates, the jury returned verdicts of guilty as to four counts of trafficking in cocaine by transportation, three counts of trafficking in cocaine by sale, and three counts of trafficking in cocaine by delivery. Defendant appeals.

[1] Defendant first contends that the trial court erred by denying his motion to dismiss each of the trafficking in cocaine offenses on the grounds of double jeopardy. Defendant argues that he was previously punished for the very same conduct for which he was criminally convicted by the assessment of the controlled substance tax. Therefore, his trafficking in cocaine convictions should have been dismissed by the trial court under the Fifth and Fourteenth Amendments to the United States Constitution. We disagree.

In our recent decision in *State v. Adams*, 132 N.C. App. 819, 513 S.E.2d 588 (1999), *disc. review denied*, 350 N.C. 836, 538 S.E.2d 570, *cert. denied*, 528 U.S. 1022, 145 L. Ed. 2d 414 (1999), we upheld the application of the controlled substance tax, holding that double jeopardy did not preclude criminal prosecution for violations of the North Carolina Controlled Substances Act, despite prior entry of judgment against defendant for unpaid taxes on seized drugs. Additionally, in the case *sub judice*, the tax levied on defendant involved his possession of the various quantities of cocaine, while he was convicted on charges arising from the transportation, sale, and delivery of cocaine. Accordingly, we overrule defendant's first assignment of error.

[2] Defendant next asserts that the trial court committed error in denying his motions, made both before and at the commencement of his trial, to sever the offenses for which he was charged. Defendant contends that each offense was separate and distinct from the other, and did not constitute a series of acts which were part of a single scheme or plan. Again, we disagree with defendant's contention.

In this state, two or more offenses may be joined for trial when the offenses are based on the same act or transaction, or a series of acts or transactions connected together or constituting parts of a single scheme or plan. *State v. Chandler*, 324 N.C. 172, 376 S.E.2d 728

(1989). Public policy favors consolidation of offenses because it tends to expedite the administration of justice, reduces congestion of trial dockets, and conserves judicial time and lessens the burden on jurors and witnesses. *State v. Boykin*, 307 N.C. 87, 296 S.E.2d 258 (1982). Our General Statutes provide:

> (b) Severance of Offenses.—The court, on motion of the prosecutor or on motion of the defendant, must grant a severance of offenses whenever:
>
> (1) If before trial, it is found necessary to promote a fair determination of the defendant's guilt or innocence of each offense; or
>
> (2) If during trial, upon motion of the defendant or motion of the prosecutor with the consent of the defendant, it is found necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court must consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

N.C. Gen. Stat. § 15A-927(b)(1), (2) (1999). "A defendant is not prejudiced by the joinder of two crimes unless the charges are 'so separate in time and place and so distinct in circumstances as to render the consolidation unjust and prejudicial to defendant.' " *State v. Howie*, 116 N.C. App. 609, 615, 448 S.E.2d 867, 871 (1994) (quoting *State v. Hammond*, 112 N.C. App. 454, 458, 435 S.E.2d 798, 800 (1993)). "If the consolidated charges have a transactional connection, the decision to consolidate the charges is left to the 'sound discretion of the trial judge and that ruling will not be disturbed on appeal absent an abuse of discretion.' " *State v. Weathers*, 339 N.C. 441, 447, 451 S.E.2d 266, 269 (1994) (quoting *State v. Silvia*, 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981)) (error to consolidate, for trial, charge of murder with charge of failure to appear for murder trial). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

Defendant points out that evidence was presented to the jury on a total of fifteen different trafficking offenses encompassing four separate offense dates (7 November 1996, 27 November 1996, 3 April 1997, and 6 May 1997) which occurred in a time span of six months.

Defendant contends that the State was able to adduce evidence regarding each offense date, the effect of which was to strengthen evidence of defendant's guilt on the weaker counts with evidence from the stronger counts. Defendant submits that the "sheer quantity of offenses charged, coupled with the evidence adduced to attempt to prove each offense, created a trial atmosphere which was unjust, unfair and highly prejudicial." Likewise, the State contends that the testimony and evidence indicate that all four transactions were strikingly similar as they were transpired, monitored, recorded, and executed almost identically. In each instance, the transaction was carefully set up, monitored, recorded and documented. The State contends that they "showed the defendant to be a major drug dealer who made repeated drug sales" to the same informant. We agree. In *State v. Howie*, we held that the trial court correctly consolidated two charges for trial when the offenses occurred weeks apart, stating:

> The evidence clearly shows that the offenses were not only similar, but that they involved the same pattern of operation. Defendant watched as each victim used a teller machine at the same bank, NationsBank in Watauga Village. Defendant followed each victim home. Defendant observed each victim while hiding outside, and, stealthily, entered the house and stole the victim's purse. On cross-examination, defendant admitted that it was his "operation" to watch people use their ATM cards, memorize the numbers, and then steal their purses. We do not find that the circumstances of the two offenses are so distinct as to render consolidation unjust and prejudicial.

*Howie*, 116 N.C. App. at 615-16, 448 S.E.2d at 871. Similarly, in ruling on this issue in the case at bar, the trial court stated:

> The events involve the same parties and involve the same informant dealing in the same subject. It's basically the same conduct going on in each episode. And I think the jury can determine that there were four separate events, that they occurred on four separate occasions, and that the ends of justice will best be promoted by having them all tried together in one case.
>
> I don't feel it's unduly prejudicial to the defendant and it would preclude the necessity of having to try four separate cases involving basically not a very unusual factual situation in each one of them. And in any event, Judge Hockenbury has already ruled on your motion previously that the cases be severed be

denied, so that matter has already been addressed. I'll address it again and deny it.

In the case sub judice, each of the charges against defendant occurred within a six month period and indicated the same pattern of operation between defendant and the informant Harrington during this time. Defendant always retrieved the cocaine from the woods, on or near his property at Sticks Road, would often plan the exchange with Harrington ahead of time, always took cash in payment from Harrington, and almost always delivered the cocaine to Harrington in clear plastic bags. This evidence indicates defendant had a common, continual method of transacting drug sales, and we are therefore unable to say that the trial judge abused his discretion by consolidating all charges for trial. Accordingly, the assignment of error is rejected.

[3] Defendant next assigns error to the trial court's denial of his motion *in limine* to require the State to reveal to him those acts it intended to prove under Rule 404(b) of the Rules of Evidence, and those acts it would attempt to elicit, should the defendant testify, under Rule 608(b) of the Rules of Evidence.

Rule 608 of the Rules of Evidence permits the State to inquire into specific acts of conduct on cross-examination if the act inquired about is probative of truthfulness or untruthfulness. *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986). Whether an act is probative of truthfulness or untruthfulness is a legal question and a criminal defendant should have assurances that she will not be questioned improperly about such matters prior to testifying on her own behalf. *State v. Lamb*, 321 N.C. 633, 365 S.E.2d 600 (1988). In *Lamb*, the defendant repeatedly requested a ruling as to whether the State could question her about evidence implicating her in other murders. The North Carolina Supreme Court held that the failure of the trial court to rule on this motion resulted in an impermissible chilling of the defendant's right to testify on her own behalf. *Lamb*, 321 N.C. at 649, 365 S.E.2d at 609. Whether the denial of defendant's motion *in limine* impermissibly chills the defendant's right to testify is based upon the peculiar facts of each case. *State v. Barber*, 120 N.C. App. 505, 463 S.E.2d 405 (1995), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 906 (1996).

The trial court in the present case ruled that defendant's prior drug deals could only come in if he "open[ed] the door" by taking the stand and denying he had ever dealt drugs. The court stated:

STATE v. MANNING

[139 N.C. App. 454 (2000)]

> It would be my thinking unless he opens the door and gets up here and testifies to something about he hadn't done anything at all and that sort of thing, then you can't get into what Mr. Bazemore said in his search warrant affidavit.

Defendant asserts that this ruling was "tantamount to no ruling . . . as each individual act of the Defendant, whether probative of truthfulness or not, would be admissible." We disagree. This ruling indicates that defendant could not be questioned about prior drug deals unless he opened the door by denying involvement in such deals on direct examination. Furthermore, assuming the ruling was erroneous, the defendant has not shown prejudice because he did not make an offer of proof regarding his testimony, and there is no evidence as to what his factual defense would have been. Accordingly, this assignment of error is overruled.

**[4]** Defendant next contends that the trial court erred by admitting audiotapes into evidence that were inaudible, unintelligible, and fragmented.

The determination as to whether an audiotape should be admitted into evidence, and as to whether it is sufficiently audible and intelligible, is a question for the trial court. *State v. Lynch*, 279 N.C. 1, 181 S.E.2d 561 (1971). In the present case, the trial court ruled that the audiotapes in question were admissible and did not find that they were inaudible or unintelligible. The evidence indicates that while the tapes were played, no juror interrupted to assert that any of the tapes, or any portion of them, was inaudible, unclear, unintelligible, or fragmented. Accordingly, we hold that defendant has failed to show an abuse of discretion by the trial court, and this assignment of error is overruled.

**[5]** Defendant next assigns error to the trial court's denial of his motion for mistrial based upon the prosecution's comments during trial as to disturbances by noise from the audience, and its objection to Harrington being asked where he lived in questioning by defendant; however, we note defendant was not mentioned in these comments. Our Criminal Procedure Act provides in pertinent part: "The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (1999). "It is well established that the decision as to whether substantial and irreparable prejudice has occurred lies

within the sound discretion of the trial judge and that his decision will not be disturbed on appeal absent a showing of abuse of discretion." *State v. Thomas*, 350 N.C. 315, 341, 514 S.E.2d 486, 502, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). In the case at bar, we are at a loss to discern how the prosecution's comments about noise in the audience could prejudice defendant. While defendant asserts that the objection regarding Harrington's residence was meant to convey that defendant was a dangerous and violent man, likewise, we see no way that this could substantially prejudice defendant. Defendant was not mentioned in this comment. Harrington himself testified that he had been a drug informant in other cases; therefore, it was clear that the State would not want the residence of an undercover agent revealed, especially one that had been involved in numerous cases. We see no prejudice against defendant resulting from the prosecution's statements. Therefore, we hold the trial court did not abuse its discretion in denying defendant's motion for a mistrial. Accordingly, this assignment of error is overruled.

**[6]** Defendant next contends the trial court abused its discretion by not declaring a mistrial under N.C. Gen. Stat. § 15A-1601 because the State did not provide discovery to him as required by N.C. Gen. Stat. § 15A-903(d), resulting in substantial and irreparable prejudice against him. The record reveals that during trial, Maria Joycs ("Officer Joycs"), a special agent with the Federal Bureau of Investigation, testified that prior to giving Harrington $15,000.00 to buy cocaine from defendant on 6 May 1997, she photocopied the currency and compiled a list of the serial numbers on the bills. She further testified that she determined, by comparing the money seized from defendant with the photocopy and serial number list, that the currency seized was the same currency that had been given to Harrington for a drug buy. Defendant objected to this testimony on the basis that he was not provided with this information through discovery.

We note that defendant is not entitled to evidence in the form of testimony until the witness takes the stand at trial:

> In any criminal prosecution brought by the State, no statement or report in the possession of the State that was made by a State witness or prospective State witness, other than the defendant, shall be the subject of subpoena, discovery, or inspection until that witness has testified on direct examination in the trial of the case.

N.C. Gen. Stat. § 15A-903(f)(1) (1999). Therefore, if Officer Joyce made a statement prior to trial regarding this evidence, defendant was not entitled to it through discovery. However, under N.C. Gen. Stat. § 15A-903(d), the State must furnish to the defendant any documents or tangible objects "within the possession, custody, or control of the State . . . which are material to the preparation of his defense, are intended for use by the State as evidence at the trial, or were obtained from or belong to the defendant." N.C. Gen. Stat. § 15A-903(d) (1999). The record reveals that the currency, serial number list, and photocopy in question were not exhibits at trial because they had either been used in other drug buys and were not available or had been destroyed prior to trial. Ken Bazemore, of the State Bureau of Investigation, testified on *voir dire* examination:

Q. Mr. Bazemore, did you maintain a record of those serial numbers taken from the currency that your agency seized from Russell Manning on May 6, 1997?

A. I did not.

Q. Did you maintain photocopies which were made of the currency that was seized from Russell Manning's residence on May 6, 1997?

A. No.

Q. Did you ever receive either the photocopy of the serial numbers or the photocopy of the currency which was seized from Russell Manning's residence on May 6, 1997?

A. The photocopy was initially in my possession.

Q. Okay. Well, what did you do with them?

A. As soon as we confirmed—because of the amount of money, number one, we knew that the money was going to be returned, not as evidence, but back in the system for additional drug buys. The reason we photocopy the bills was in case something went wrong with the deal, someone was shot, et cetera, et cetera, we could attach the money to the bad guy. None of that occurred. At the conclusion of the deal we knew the money was not going to be available to be present in court to match those serial numbers with the photocopies; there was no reason to keep the photocopy of those numbers.

**STATE v. MANNING**

[139 N.C. App. 454 (2000)]

Q. Okay. So who made the decision to destroy the photocopy of the currency?

A. I probably did.

Q. Do you know if you did?

A. I'm sure I did.

Q. Do you know who actually destroyed it?

A. I did.

Q. You did?

A. Yeah.

. . .

Q. Did you consult with the District Attorney's Office before you destroyed the photocopies of the currency?

A. I don't know if the District Attorney ever knew that I had a photocopy.

. . .

Q. Did you have any discussions with any members of the District Attorney's Office prior to you making the decision to destroy the copies of the currency that you say you made of money that was seized from Mr. Manning's property on May 6, 1997?

A. No.

Q. And did you and Ms. Joycs have any discussions prior to this morning about her testifying about the fact that she compared the serial numbers with the photocopies with the money that was seized from Russell Manning's residence on May 6, 1997?

A. Absolutely did not.

Q. Did not?

A. Did not.

Q. Now, why is it your testimony or why did you believe that the money could not be introduced at the trial of this case?

A.  Because I knew the money was not going to be here. I knew the money would already be back in circulation for future drug buys.

Q.  And my question is why did you not take that money and safeguard that and put that in the evidence locker like any other evidence?

A.  Because it was not a financially feasible thing to do based on the amount of cocaine we have to buy on different days. We cannot afford to do that.

The currency in question was obtained from defendant, and the serial number list and photocopy was used to identify the currency and charge defendant. Thus, it is clear all of these objects should fall under the ambit of N.C. Gen. Stat. § 15A-903(d), and as such, should have been made available to defendant. See *State v. Stephens*, 347 N.C. 352, 362, 493 S.E.2d 435, 441 (1997), *cert. denied*, 525 U.S. 831, 142 L. Ed. 2d 66 (1998). (N.C. Gen. Stat. § 15A-903(d) requires the State to turn over all "documents . . . [and] tangible objects . . . material to the preparation of [the] defense.") Obviously, if these documents were not presented to the prosecution by the investigating officers, the prosecution has no way to convey them to defendant; however, their existence and use was presented to the jury through testimony of the State's witnesses. Defendant should have been informed as to their existence through discovery, in order for him to prepare his defense. We do not approve of the practice of destroying evidence as was employed in this case, as such approval would encourage the State to destroy evidence which should be made available to a defendant without repercussion. However, we do not believe that defendant has shown substantial and irreparable prejudice to his case due to the overwhelming evidence on the charges stemming from the drug buy on 6 May 1997, including a recording of the drug buy obtained from the wire-tapped informant, testimony of the informant, surveillance of the area by officers, and seizure of defendant just after the transaction, when a substantial amount of cocaine was found on his person. As we have previously noted, "the decision as to whether substantial and irreparable prejudice has occurred lies within the sound discretion of the trial judge and . . . his decision will not be disturbed on appeal absent a showing of abuse of discretion." *State v. Thomas*, 350 N.C. at 341, 514 S.E.2d at 502. Based on the foregoing, we cannot say that the trial court abused its discretion on this matter, and accordingly, we overrule this assignment of error.

**[7]** Finally, defendant contends that the trial court erred in denying his motion to dismiss the cocaine trafficking offense contained in 97CRS 11031, trafficking cocaine by transportation. The charge at issue in this assignment of error resulted from defendant's running away from arresting officers while carrying 109 grams of cocaine after he had just sold Harrington 449 grams of cocaine. Defendant asserts that these two instances constitute one offense.

A continuing offense is a breach of the criminal law not terminated by a single act or fact, but which subsists for a definite period and is "intended to cover or apply to successive, similar obligations or occurrences." *State v. Johnson*, 212 N.C. 566, 570, 194 S.E. 319, 322 (1937). Under our General Statutes,

> Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony, which felony shall be known as "trafficking in cocaine" . . . .

N.C. Gen. Stat. § 90-95(h)(3) (1999). "A conviction for trafficking in cocaine by transportation requires that the State show a 'substantial movement.' " *State v. Wilder*, 124 N.C. App. 136, 140, 476 S.E.2d 394, 397 (1996) (quoting *State v. Greenidge*, 102 N.C. App. 447, 451, 402 S.E.2d 639, 641 (1991)). Transportation is defined as " 'any real carrying about or movement from one place to another.' " *State v. Outlaw*, 96 N.C. App. 192, 197, 385 S.E.2d 165, 168 (1989), *disc. review denied*, 326 N.C. 266, 389 S.E.2d 118 (1990) (quoting *Cunard Steamship Company v. Mellon*, 262 U.S. 100, 122, 67 L. Ed. 894, 901 (1922)).

> Our courts have determined that even a very slight movement may be "real" or "substantial" enough to constitute "transportation" depending upon the purpose of the movement and the characteristics of the areas from which and to which the contraband is moved. For instance, in *State v. Outlaw*, 96 N.C. App. 192, 385 S.E.2d 165 (1989), *disc. review denied*, 326 N.C. 266, 389 S.E.2d 118 (1990), our Court concluded that the defendant was guilty of trafficking by transporting cocaine when he removed drugs from a dwelling, placed them in his truck parked in the driveway, and backed a minimal distance down his driveway.

*State v. McRae*, 110 N.C. App. 643, 646, 430 S.E.2d 434, 436, *disc. review denied*, 334 N.C. 625, 435 S.E.2d 347 (1993) (citation omitted). In *McRae*, this Court held that when defendant removed the drugs from a dwelling house and carried them to a car by which he left the premises with an undercover agent, there was "substantial" move-

**STATE v. MANNING**

[139 N.C. App. 454 (2000)]

ment sufficient to sustain the charge of trafficking by transporting cocaine. Also, in *State v. Greenidge*, we held that the tossing of drugs from a dwelling to a point outside the curtilage was "real" or "substantial" movement so as to constitute "transportation." *State v. Greenidge*, 102 N.C. App. 447, 402 S.E.2d 639. In another case where the defendant had tossed contraband into bushes approximately ten feet from the car in which he was stopped, the Court pointed out:

> A reasonable mind could further conclude that there was a "substantial movement" of the cocaine when the defendant threw the cocaine into the bushes thus avoiding being caught with the cocaine and making it possible to later retrieve it for his subsequent use and benefit.

*State v. Wilder*, 124 N.C. App. at 140, 476 S.E.2d at 397.

A determination of whether there has been "substantial movement" involves consideration of "*all* the circumstances surrounding the movement," including "the purpose . . . and the characteristics of the areas from which and to which the contraband is moved." *Greenidge*, 102 N.C. App. at 451, 402 S.E.2d at 641 (emphasis in original). The evidence relevant to the issue at hand indicates that defendant had sold 449 grams of cocaine to Harrington and Harrington had left the area. Armed officers then appeared shouting "police, police. Don't move. Put your hands up," at which point defendant ran some distance, transporting 109 grams of cocaine which had not been traded in the transaction with Harrington. Defendant did not attempt to rid himself of the cocaine as he fled the area in a futile attempt to outrun police officers. Obviously, defendant tried to transport the cocaine out of the reach of the police. A reasonable mind could conclude that defendant's purpose in transporting the cocaine as he fled was for his own use in a future drug sale. Therefore, we believe that his fleeing the area, for some distance, with 109 grams of cocaine, constituted substantial movement of the cocaine. Accordingly, a separate charge of trafficking in cocaine by transportation was justified and the trial court did not err in failing to dismiss this charge. This assignment of error is overruled.

No error.

Chief Judge EAGLES concurs in a separate opinion.

Judge TIMMONS-GOODSON concurs in part and dissents in part in a separate opinion.

STATE v. MANNING

[139 N.C. App. 454 (2000)]

Chief Judge EAGLES concurring.

I concur. Because *State v. Greenidge*, 102 N.C. App. 447, 402 S.E.2d 639 (1991), binds us, I concur in the majority's opinion. Nevertheless, I write separately to express my unease with this Court's application of *Greenidge* to the facts of this case and factually similar situations. Despite assertions in *Greenidge* to the contrary, I believe the case could lead to untoward results. *Greenidge* as applied here is perilously close to permitting courts to convict individuals for trafficking by transporting cocaine when the facts simply establish the mere movement of a defendant while he possesses cocaine. This issue merits attention by the General Assembly to establish a clearer and fairer standard for proof of trafficking in cocaine by transportation.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

I disagree with the holding of the majority that the trial court was correct in denying defendant's motion to dismiss the contested charge of trafficking cocaine by transportation. Considering all of the circumstances surrounding the movement of the cocaine, I believe that, as a matter of law, the evidence of defendant's actions was insufficient to sustain the charge of trafficking in cocaine by transportation in violation of section 90-95(h)(3) of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 90-95(h)(3) (1999).

In *State v. Greenidge*, 102 N.C. App. 447, 451-52, 402 S.E.2d 639, 641-42 (1991), this Court found that moving drugs from a dwelling to a point beyond its curtilage was sufficient to sustain a conviction for trafficking cocaine by transportation. While the majority quotes *Greenidge*, the facts are distinguishable from the facts *sub judice*. In *Greenidge*, an officer knocked on the door of a residence. The officer observed a man looking out the window and heard the man shout "it's the police." *Id.* at 448, 402 S.E.2d at 640. After the officer heard movement inside the house, he knocked a second time, and within minutes someone opened the door. Another officer, positioned near the rear entry of the residence, observed the defendant step onto a back porch, close a bag containing cocaine, and toss the bag into the yard next door. The officer yelled at the defendant, and the defendant retreated into the residence. Thus, the contraband had been moved from the area of the house to the area of a yard of a nearby residence.

The *Greenidge* court noted the defendant's concern that finding sufficient evidence based upon these facts

could result in a charge of trafficking [by transportation] where a suspect merely throws drugs onto the ground when approached by the police, or where a suspect moves drugs from room to room in a house, or from one drawer to another drawer, or from inside the house to the porch.

*Id.* at 450, 402 S.E.2d at 641. The Court disagreed, stating that a determination on whether there was " 'substantial movement' . . . requires a consideration of *all* the circumstances surrounding the movement and not simply the fact of a physical movement of the contraband from one spot to another." *Id.* Specifically, the Court stated:

[I]n addressing the question of whether the movement is a "substantial movement" so as to constitute transportation requires, among other things, considerations as to the purpose of the movement and *the characteristics of the areas from which and to which the contraband is moved.*

*Id.* (emphasis added).

The relevant evidence in the case at bar indicates that the SBI agent involved, Tre Harrington, performed a prearranged drug sale set up by law enforcement. Several armed law enforcement officers wearing camouflage clothing were positioned in the wooded area immediately surrounding the controlled buy. Officers observed defendant retrieve a metal box from behind a tree. Harrington drove up to the location, got out of his vehicle, and approached defendant. Defendant took a plastic bag containing cocaine from the metal box. After defendant handed Harrington the plastic bag, Harrington gave defendant a paper bag containing the agreed purchase price, and defendant placed the money in the metal box. Harrington testified that at the time of the buy, he could see a camouflaged figure only fifteen to twenty feet away. Also, one officer testified that he was located twenty to twenty-five feet from the buy and was close enough to hear the conversation between defendant and Harrington.

As Harrington drove away, officers approached defendant, shouting "police, police. Don't move. Put your hands up." At least one officer had his weapon pointed at defendant. Officers were close enough to defendant for him to hear and respond to their commands. Defendant momentarily hesitated, looked directly at one of the officers, and attempted to flee. The group of officers ran approximately fifteen to twenty yards from their original location, at which time one of the officers tackled defendant. Officers subsequently found a torn

bag of cocaine underneath defendant and cocaine powder scattered on the ground around defendant.

As a matter of law, the very specific factual scenario presented by this case did not constitute trafficking in cocaine by transportation. As noted above, in determining whether there has been "substantial movement," the *Greenidge* court directs us to examine "the characteristics of the areas from which and to which the contraband is moved." *Id.* at 451, 402 S.E.2d at 641. In utilizing the term "areas," the *Greenidge* court contemplated that substantial movement includes movement of contraband from one distinct area to another, not movement within the same area.

A review of the evidence in the case at bar reveals that defendant did not "move" the cocaine from one area to another. Rather, defendant progressed from one location within an area to another location within the same isolated, wooded area that was under the complete and exclusive control of law enforcement. I am convinced that the General Assembly did not intend a person be convicted for trafficking in cocaine by transportation based on those facts. I am further convinced that the evidence presented does not support the trafficking by transportation conviction, considering that defendant's movement was clearly in reaction to the officers' presence, and its purpose was to evade the officers' pursuit and to avoid criminal consequences.

For the foregoing reasons, I would reverse the trafficking by transportation conviction and find no error in the remaining convictions.