STATE OF NORTH CAROLINA v. ROBERT RAY GREEN

No. 577A83

(Filed 6 March 1984)

**Larceny § 7.6— misdemeanor larceny—sufficiency of evidence**

The State's evidence was sufficient to support conviction of defendant for misdemeanor larceny of meat from an A&P store and misdemeanor larceny of personal property from an Eckerd's drugstore where it tended to show: Defendant was observed in the A&P store and in the Eckerd's drugstore in the area where the recovered property was displayed, behaving in such a manner that the persons in charge of each store were moved to call the police; defendant was observed leaving each store with bulges in his clothes and without going through the checkout counter in either store; within minutes after leaving the Eckerd's store, he was found to have in his pockets and concealed inside his belt products sold by Eckerd's and many items identified by code number as being from the very store from which he had exited without going through the checkout counter; meat found between defendant's legs and in the seat he occupied in an automobile bore the label of the A&P store; and some of the meat was identified as being from the A&P store from which defendant had exited without going through the checkout counter only a short time before.

APPEAL by the State from a decision of the Court of Appeals, opinion by *Webb, J.,* with *Hedrick, J.,* concurring and *Hill, J.,* dissenting, 64 N.C. App. 616, 307 S.E. 2d 797 (1983), reversing the trial court's denial of defendant's motion to dismiss the charges against him.

Defendant was charged by warrant with the misdemeanor larceny of meat of the value of $46.72 belonging to the Great Atlantic and Pacific Tea Company, Inc., on or about the 19th day of April 1982. In a separate warrant, he was charged with misdemeanor larceny of personal property of the value of $188.87 belonging to Eckerd Drugs of North Carolina, Inc., on or about the 19th day of April 1982. Defendant entered pleas of not guilty to each charge in the District Court of Wake County. Upon his conviction of both offenses, he appealed to the Wake County Superior Court. The charges were consolidated for trial in the Superior Court and the jury returned separate verdicts of guilty of misdemeanor larceny. Defendant appealed to the Court of Appeals from judgments imposing consecutive sentences of not less than two years nor more than two years. The Court of Appeals reversed, holding that Judge Hobgood erred by failing to grant

defendant's motions to dismiss the charge in each case. The State appealed to this Court as a matter of right pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by Fred R. Gamin, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner, Assistant Appellate Defender, for defendant appellee.*

BRANCH, Chief Justice.

The sole question presented by this appeal is whether the Court of Appeals erred in holding that the trial judge erroneously denied defendant's motion to dismiss both counts of misdemeanor larceny.

We think it necessary to restate the well-established rules governing the sufficiency of the evidence to carry a case to the jury.

When a defendant in a criminal case moves to dismiss or for judgment as of nonsuit, the trial judge must determine whether there is substantial evidence of each element of the offense charged and whether defendant was the perpetrator of the offense. If there is such evidence, a motion to dismiss must be denied. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971). If, however, the evidence is sufficient only to raise a suspicion or conjecture as to the commission of the offense or as to the identity of the defendant as the perpetrator of the offense, a motion to dismiss or for judgment as of nonsuit must be allowed. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

In *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731 (1930), Chief Justice Stacy stated the general rule as follows:

[I]f there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

The function of the trial judge is to determine as a matter of law whether the evidence permits a reasonable inference of defendant's guilt of the crime charged. *State v. Thomas*, 296 N.C.

236, 250 S.E. 2d 204 (1978). The test is the same whether the evidence is direct, circumstantial or a combination of both. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). In ruling upon a motion to dismiss, the trial judge must consider all the evidence admitted, whether competent or incompetent, in the light most favorable to the State and he must give the State every reasonable inference to be drawn from that evidence. Contradictions and discrepancies in the evidence do not require dismissal and such matters are for resolution by the jury. The defendant's evidence, unless favorable to the State, is not to be considered in ruling on the motion. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982).

Larceny is the wrongful taking and carrying away of the personal property of another without his consent and with the intent to permanently deprive the owner thereof. *State v. Booker*, 250 N.C. 272, 108 S.E. 2d 426 (1959).

General Statute 14-72(a) provides that where the value of the property taken is not more than $400.00, it is a misdemeanor punishable under G.S. 14-3(a). Subsection (b) of the statute, which provides for other circumstances where the larceny is a felony without regard to the value of the property taken, is not applicable to the facts of this case.

We summarize pertinent portions of the State's evidence as follows:

James M. McConnell testified that he worked for the Great Atlantic and Pacific Tea Company, Inc. (hereinafter referred to as A&P), as night manager at its store on Western Boulevard in Raleigh, North Carolina. On the night of 18 April 1982, at approximately 11:30 p.m., he observed defendant at the meat counter "fumbling" with the meat. As McConnell started to the front of the store to call the police, he observed defendant leave the premises. Defendant's shirttail was out and the back of it was "bulged." The witness did not see defendant go through the checkout counter. Neither he nor any other employee of A&P gave defendant permission to take anything from the store.

Mrs. Blanche Steinbeck testified that she was employed by Eckerd Drugs of North Carolina (hereinafter referred to as Eckerd's) at its Holly Park Store in Raleigh, North Carolina, as

night cashier. She came to work at midnight on 18 April 1982. Shortly thereafter, she observed defendant standing in front of the store magazine rack reaching toward a shelf where over-stocked merchandise such as radios were on display. When defendant saw her looking at him he went to the cosmetics counter. At that time she called the police. About fifteen minutes later defendant, accompanied by a female companion, left the store without going through the checkout counter. It appeared as if he had something in his pockets. Neither Mrs. Steinbeck nor any other person gave defendant permission to take anything from the store.

Patrolman J. G. Moore of the Raleigh Police Department testified that he was on duty during the early morning hours of April 19, 1982, and at about 12:34 a.m., as he was sitting about three hundred feet from Eckerd's Holly Park Store, he received a call about a possible larceny at that store. He observed four people including defendant enter a car in the parking lot of the shopping center and he then called for assistance. He and three other patrolmen stopped the car occupied by defendant about seventy-five feet from the entrance to the shopping center parking lot. Defendant was sitting on the passenger side of the front seat and the witness observed some meat between his legs. Defendant was ordered from the automobile and during a body search for weapons, the officers discovered several pieces of jewelry (State's Exhibit 12) in defendant's rear pocket, two bottles of cologne in his right front pocket, and a cosmetic item in his front pants pocket. Two hair care items and cologne were concealed in defendant's belt by his shirt. Officer Moore put the items in grocery bags and wrote defendant's name on them. In court, Moore identified items shown to him as those which he put in the bags on the morning of 19 April 1982.

Later that morning at about 1:00 a.m., Officer Moore brought defendant into the drugstore, together with the five grocery bags containing merchandise retrieved from defendant's person. Mrs. Steinbeck identified a cosmetic item (State's Exhibit 2), a hair care item (State's Exhibit 5), another hair care item (State's Exhibit 6), and cologne (State's Exhibit 8), as items which came from Eckerd's Holly Park Store. She made this positive identification because each item had the Holly Park Store number 1175 upon it. She also identified a radio as one similar to those sold by the

store, and Wind Song Cologne as an item carried by the store. The witness also identified other items as similar to those carried by Eckerd's. She placed a value of less than $200 on the items identified by her.

After delivering these items to Eckerd's, Officer Moore then took four packages of meat from the right front of the automobile in which defendant was riding, three of which contained A&P labels on the package. He called Mr. McConnell at the Western Boulevard A&P Store. McConnell came to the police station and identified three of the packages of meat taken from the car occupied by defendant as being from the Western Boulevard A&P Store.

Mr. McConnell testified that he identified the meat shown him by Officer Moore from the sticker on it. He stated that the sticker showed the date of 20 April and that it had the letter (F) on it, indicating that a girl who worked in the store on Western Boulevard wrapped the meat.

In summary, the State's uncontradicted evidence shows that defendant was observed in the A&P Store and the Eckerd's Store in the area where the recovered property was displayed, behaving in such a manner that the persons in charge of each store were moved to call police. Defendant was observed leaving each store with bulges in his clothes and he did not go through the checkout counter in either store. Within minutes after leaving the Eckerd's Store, he was found to have in his pockets and concealed inside his belt products sold by Eckerd's and many items identified by code number as being from the very store from which he had exited without going through the checkout counter. Meat was found between his legs and in the seat he occupied which bore the label of the A&P Store. Some of the meat was identified as being from the A&P Store on Western Boulevard from which defendant had exited without going through the checkout counter within an hour before the still partially frozen meat was found in his possession.

We are of the opinion that there was plenary evidence from which the jury could reasonably infer that on or about 19 April 1982, defendant took and carried away property from the A&P Store and from the Eckerd's Store without the consent of the owner or anyone in charge of the establishments and with the in-

tent to permanently deprive the respective owners of the property.

We hold that the trial judge properly denied defendant's motion to dismiss each count of misdemeanor larceny.

The decision of the Court of Appeals is

Reversed.