STATE OF NORTH CAROLINA v. EMMETT BERNARD SHIPP

No. COA02-67

(Filed 31 December 2002)

**1. Drugs—trafficking in heroin by possession—possession of heroin with intent to sell or deliver—selling heroin—disjunctive jury instruction**

The trial court did not commit plain error in a trafficking in heroin by possession, possession of heroin with intent to sell or deliver, and selling heroin case by instructing the jury in the dis-

junctive that defendant could be convicted if the jury found that he sold heroin to either of two individuals or both even though defendant contends the indictment alleged that defendant sold heroin to one individual, because: (1) the trial court's instruction did not present the jury with theories of conviction not charged in the bill of indictment; (2) the indictment 00 CrS 124301 charges that defendant sold heroin to the two undercover officers and a conviction would be permitted upon a showing that defendant sold heroin to either or both officers; (3) although the indictments in 00 CrS 124295 and 00 CrS 124298 charged that defendant sold heroin only to one undercover officer, it cannot be said that the instruction allowed for conviction on any theory other than those alleged in the respective indictments; (4) the trial court instructed the jury as to all three indictments in one single charge and the trial court followed the disjunctive charge with the words "as the case may be"; and (5) the verdict sheets for 00 CrS 124295 and 00 CrS 124298 also indicate that conviction was expressly limited to the theory charged in the indictments.

2. **Drugs—trafficking in heroin by possession—possession of heroin with intent to sell or deliver—selling heroin—sufficiency of evidence**

The trial court did not err in a trafficking in heroin by possession, possession of heroin with intent to sell or deliver, and selling heroin case by denying defendant's motion to dismiss case numbers 00 CrS 124298 and 00 Crs 124300, because there was ample evidence in the record to reasonably support the conclusions that: (1) defendant sold State's Exhibit Number 8 to two undercover officers on 4 February 2000; and (2) the substance sold was heroin.

3. **Criminal Law—prosecutor's argument—personal opinion—uncomplimentary conduct—defendant as car with faulty brakes—hit of heroin—no plain error**

The trial court did not commit plain error in a trafficking in heroin by possession, possession of heroin with intent to sell or deliver, and selling heroin case by failing to correct alleged improper statements made by the prosecutor during closing arguments concerning her personal opinion as to the credibility of a witness, uncomplimentary conduct toward defense counsel, the prosecutor's portrayal of defendant as a car with faulty brakes, and what constituted a "hit" of heroin, because: (1) the prosecutor's argument was not so grossly improper as to require

STATE v. SHIPP

[155 N.C. App. 294 (2002)]

the trial court to intervene ex mero motu; and (2) defendant has not established that the jury probably would have reached a different result.

## 4. Joinder—crimes—motion to sever trial—single scheme or plan

The trial court did not abuse its discretion in a trafficking in heroin by possession, possession of heroin with intent to sell or deliver, and selling heroin case by denying defendant's motion to sever the trial of the 12 January 2000 offenses, because: (1) defendant was charged with seven drug offenses involving both the possession and sale of heroin, and the offenses occurred on three separate dates over the course of less than two months; (2) the acts or transactions were either connected together or constituted parts of a single scheme or plan to distribute heroin; and (3) a defendant fails to show abuse of discretion on the part of the trial judge in joining two offenses for trial where defendant's only assertion of possible prejudice is that he might have elected to testify in one of the cases and not in the others.

Appeal by defendant from judgment entered 14 June 2001 by Judge James W. Morgan in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly P. Hunt, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant, Emmett Bernard Shipp, appeals from judgment entered in Mecklenburg County Superior Court upon a jury verdict finding him guilty of one count of trafficking in heroin by possession; three counts of possession of heroin with the intent to sell or deliver; and three counts of selling heroin.

The State's evidence tended to establish that on 12 January 2000, the Charlotte-Mecklenburg Police Department was involved in a 2-3 month long undercover drug investigation in the area surrounding the intersection of Kohler Avenue and Statesville Avenue in Charlotte, North Carolina. Officer Patrick Mulhall ("Mulhall") and Officer Michael Marlow ("Marlow") of the Charlotte-Mecklenburg Police

Department's vice and narcotics division were assigned to drive through the area and attempt to make undercover purchases of heroin from street dealers who "flagged" them down.

On 12 January 2000, Mulhall drove with Marlow to the area of Kohler Avenue and Statesville Avenue. While the officers were stopped at an intersection, defendant, who was walking up the street with another man, called out to the officers. Defendant walked up to the driver's side of the car and asked Mulhall what they wanted. Mulhall replied "two bags," meaning heroin. Defendant told Mulhall to meet him at "the top of the hill" and disappeared from the officers' sight. After driving to the top of the hill, the officers were met by several people in a green minivan. The officers followed the van to a duplex on Olando Avenue where defendant was standing in the front yard.

Once the officers stopped in front of the duplex, defendant walked up to the driver's side of the car. Mulhall told defendant they wanted "two bags" of heroin. Defendant walked over to a parked gray Ford Tempo, retrieved something from the trunk and then placed two "cellophane baggies" on the passenger door's armrest of the officers' car. Mulhall and Marlow gave defendant fifty dollars: Mulhall put twenty-five dollars on the car's dash while Marlow handed twenty-five dollars to defendant directly. Defendant took the money and told the officers to come back to the house and beep the horn if they wanted "anything else." Mulhall and Marlow then left.

Mulhall placed the two cellophane baggies into a larger evidence envelope and sealed it with tape. Mulhall then obtained a complaint number for the incident and wrote this number on the envelope, along with his initials and the letters "B/M." Mulhall turned the evidence over to the Charlotte-Mecklenburg Police Department's ("CMPD") property control facility with a request for chemical analysis of the substance contained in the cellophane baggies. Mulhall and Marlow then looked through books of police photographs until they identified defendant as the person who sold them the cellophane baggies.

At approximately 9:15 a.m. on 4 February 2000, Mulhall and Marlow again drove through the area of Statesville Avenue and Kohler Avenue seeking to make undercover purchases of heroin. This time defendant was driving what appeared to be the same gray Ford Tempo from which the officers had seen defendant retrieve the drugs on 12 January 2000. Defendant came up behind the officers' car in the

Tempo and flashed his headlights. The officers stopped and defendant pulled along side the officers' car. Defendant asked Mulhall what they wanted. Mulhall said "two bags," indicating heroin. Defendant told the officers to follow him. He led the officers back to the same duplex on Olando Avenue. Once there, defendant got out of his car, walked over to the officers' car and handed Mulhall two "bags" of heroin. Mulhall handed defendant fifty dollars while Marlow discussed the possibly of purchasing larger quantities of heroin from defendant in the future. This prompted defendant to give the officers his pager number as well as a code number to key in when they called. After receiving the number, the officers left and turned the evidence over to CMPD property control in virtually the same manner as on 12 January 2000, except this time, defendant's name was written on the evidence envelope instead of the descriptive initials, "B/M."

At approximately 10:30 a.m. on 4 February 2000, Marlow paged defendant and arranged to purchase one gram of heroin for $250. The officers then drove to the duplex on Olando Avenue where defendant lived. Defendant met the officers at their car. Following a brief conversation, defendant gave Mulhall the heroin and Marlow gave defendant $250. The officers left and turned the evidence over to CMPD property control.

On 24 February 2000, Mulhall and Marlow met Arnell Huffman in the parking lot of Wayne Supermarket to purchase $1500 worth of heroin. Huffman got into the officers' car and directed them to drive to a residential area of North Pine Street. Huffman then got out of the officers' car and walked across North Pine Street where he met defendant and engaged in a brief conversation. Following this conversation, both Huffman and defendant walked back to the officers' car. Defendant briefly engaged Mulhall in conversation and then walked to the passenger side of the car and did the same to Marlow. Defendant told Marlow that the heroin the officers were supposed to buy was actually going to cost $1600 instead of $1500 as previously agreed. Defendant attributed the increase to a "misquote" in the price on the part of Huffman. Defendant then handed Marlow a bag containing approximately six grams of heroin. In return, Marlow gave defendant $1600. Following the exchange, the officers returned to the police department where the evidence was turned over to CMPD property control.

For the events that occurred on 12 January 2000, defendant was indicted on one count of sale of a controlled substance and one count

of possession with intent to sell or deliver a controlled substance. For the events of 4 February 2000, defendant was indicted on two counts of sale of a controlled substance and two counts of possession with intent to sell or deliver a controlled substance. For the events of 24 February 2000, defendant was indicted on one count of trafficking in drugs by possession. Defendant was convicted on all counts and sentenced to 115-125 months imprisonment and a $50,000 fine. Defendant appeals.

[1] Defendant first argues that there was a fatal variance between the allegations in the bills of indictment and the trial court's instructions to the jury. The sale indictment stemming from the events of 12 January 2000 charged that defendant "did unlawfully, willfully and feloniously sell *to P.J. Mulhall and M.D. Marlow,* a controlled substance, to wit: heroin . . . ." (Emphasis added.) The two sale indictments stemming from the events that occurred on 4 February 2000 charged that defendant "did unlawfully, willfully and feloniously sell *to P.J. Mulhall,* a controlled substance, to wit: heroin . . . ." (Emphasis added.) The trial court, in a single charge as to all of the sale offenses, gave the following instruction to the jury:

> The defendant has been accused of selling heroin, a controlled substance. Now I charge that for you to find the defendant guilty of selling heroin, a controlled substance, the State must prove beyond a reasonable doubt that the defendant knowingly sold heroin *to P.J. Mulhall or M.D. Marlow or both,* as the case may be, exchanging heroin for money, would be a sale of a controlled substance. So I charge that if you find from the evidence beyond a reasonable doubt, that on or about the alleged date, the defendant knowingly sold heroin *to P.J. Mulhall or M.D. Marlow or both,* as the case may be, it would be your duty to return a verdict of guilty as charged. (Emphasis added.)

Defendant argues that because two of the indictments allege that "only P.J. Mulhall" was the purchaser of the heroin and the remaining indictment alleged that "both P.J. Mulhall and M.D. Marlow" were the purchasers; the trial court's instruction that defendant could be convicted if the jury found that he "sold heroin to P.J. Mulhall or M.D. Marlow or both," amounted to plain error. Defendant contends that by instructing the jury in the disjunctive "or" where the indictment charges in the conjunctive "and," the trial judge submitted the case to the jury on a theory not charged in the bills of indictment. We disagree.

The plain error standard requires a defendant to make a showing that absent the erroneous instruction, a jury would not have found him guilty of the offense charged. To rise to the level of plain error, the error in the instructions must be 'so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him.'

*State v. Lancaster*, 137 N.C. App. 37, 46, 527 S.E.2d 61, 68 (2000) (citations omitted), *disc. review denied in part*, 352 N.C. 680, 545 S.E.2d 723 (2000).

Defendant correctly asserts that "an indictment for the sale and/or delivery of a controlled substance must accurately name the person to whom the defendant allegedly sold or delivered the controlled substance, if that person is known." *State v. Redd*, 144 N.C. App. 248, 256, 549 S.E.2d 875, 881 (2001). Furthermore, " '[i]t is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment.' " *State v. Tucker*, 317 N.C. 532, 537-38, 346 S.E.2d 417, 420 (1986) (quoting *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980)). Therefore, "the trial court should not give instructions which present to the jury possible theories of conviction which are either not supported by the evidence or not charged in the bill of indictment." *State v. Taylor*, 304 N.C. 249, 274, 283 S.E.2d 761, 777 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983). However, after careful review of the record and trial transcript, we conclude that the trial court's instruction did not present the jury with theories of conviction not charged in the bill of indictment.

We are guided by *State v. Lancaster*, 137 N.C. App. 37, 527 S.E.2d 61 (2000). In *Lancaster*, defendant was charged with kidnapping by an indictment which alleged the offense was perpetrated by "unlawfully confining, restraining *and* removing [the victim] from one place to another without her consent." *Id.* at 46, 527 S.E.2d at 67 (emphasis added). The trial court's instructions to the jury stated in pertinent part that "[i]f you find from the evidence beyond a reasonable doubt that . . . the defendant unlawfully confined a person, restrained a person, *or* removed a person from one place to another . . . it would be your duty to return a verdict of guilty . . . ." *Id.* at 46, 527 S.E.2d 68 (emphasis added).

The defendant in *Lancaster* argued, as defendant does here, that the conjunctive allegations of the indictment and the trial court's dis-

junctive instructions to the jury ran afoul of our Supreme Court's holding in *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986). However, the *Lancaster* court distinguished *Tucker* on grounds that the indictment in *Tucker* limited the alleged kidnapping to one theory, while the jury instructions allowed for a conviction based on a different theory than the one set out in the indictment. *Lancaster*, 137 N.C. App. at 47, 527 S.E.2d at 68. The *Lancaster* court went on to hold that where the indictment charged defendant in the conjunctive, *i.e.*, "with kidnapping by 'confining, restraining *and* removing,'" a jury instruction in the disjunctive, which permitted conviction "upon a showing of *either* confining, restraining *or* removing" was permissible because it was not based upon "an 'abstract theory not supported by the bill of indictment.'" *Id.* (emphasis added). We conclude that *Lancaster* is controlling.

Here, indictment 00 CrS 124301 charges that defendant sold heroin to "P.J. Mulhall and M.D. Marlow." Applying *Lancaster*, a conviction would be permitted upon a showing that defendant sold heroin to either Mulhall, Marlow or both. Therefore, the instruction in the disjunctive did not permit conviction on an abstract theory, not supported by the bill of indictment as to that charge. Moreover, although the indictments in 00 CrS 124295 and 00 CrS 124298 charged that defendant sold heroin only to "P.J. Mulhall," we cannot say the trial court's instruction in this case allowed for conviction on any theory other than those alleged in the respective indictments.

It should be noted that the trial court instructed the jury as to all three indictments in one single charge. Furthermore, the trial court followed the disjunctive charge with the words "as the case may be." The inclusion of this language limited the jury to convicting defendant only upon the theories reflected in the respective indictments. Finally, the verdict sheets for 00 CrS 124295 and 00 CrS 124298 also indicate that conviction was expressly limited to the theory charged in the indictments. In each case the jury was presented with only two choices: "Guilty of sale of heroin . . . to P.J. Mulhall" or "Not guilty." On this record, we conclude that the trial court's instruction did not have a probable impact on the jury's finding of defendant's guilt. Accordingly, this assignment of error is rejected.

[2] Defendant next argues that the trial court improperly denied his motion to dismiss in case numbers 00 CrS 124298 and 00 CrS 124300, based on insufficiency of the evidence. Defendant contends that neither officer "actually identified" the heroin sold to them during the

second transaction that occurred on 4 February 2000 because Officer Marlow testified that State's Exhibit No. 8 was "the alleged heroin that was purchased from Mr. Shipp approximately 11:30 hours on the 24th of February," instead of the 4th of February. Defendant further argues that the State's evidence was insufficient to show that the substance that was purchased was "actually heroin." We disagree.

It is well established that when ruling on a motion to dismiss for insufficiency of the evidence,

> the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. The defendants' motion must be denied if the State has offered substantial evidence against defendant of every essential element of the crime charged. 'Substantial evidence' is defined as that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The test of the sufficiency of evidence to withstand dismissal is the same whether the State's evidence is direct, circumstantial, or a combination of the two.

*State v. Porter*, 303 N.C. 680, 685-86, 281 S.E.2d 377, 381-82 (1981) (citations omitted). Defendant's own evidence, if favorable to the State, may also be considered in ruling on the motion. *State v. Green*, 310 N.C. 466, 468, 312 S.E.2d 434, 435-36 (1984).

Here, both Officer Marlow and Officer Mulhall testified on direct examination that they purchased heroin from defendant at approximately 11:30 a.m. on 4 February 2000. Marlow further testified that immediately after the purchase was complete, he sealed the heroin (State's Exhibit No. 8) in an evidence envelope (State's Exhibit No. 7); obtained a complaint number; wrote the complaint number on the evidence envelope; and submitted both the evidence envelope and the evidence contained in it to CMPD property control. Marlow testified that the sequence of numbers in the complaint number ("2000-0204-120503") indicated that the number had been issued on 4 February 2000 at 12:05 p.m. Willie Earl Rose, a criminalist with the Charlotte-Mecklenburg Police Department's crime lab, testified as an expert in the area of forensic chemistry and controlled substance identification. Rose testified that he performed a chemical analysis of State's Exhibit No. 8 and found it to be 0.48 grams of heroin. Finally, defendant himself testified that he sold heroin to Mulhall and Marlow on 4 February 2000. We conclude there is ample evidence in the record to reasonably support the conclusions that: (1) defendant sold

State's Exhibit No. 8 to Mulhall and Marlow on 4 February 2000; and (2) that the substance sold was heroin. Accordingly, the trial court properly denied defendant's motion to dismiss.

**[3]** Defendant next argues that the trial court committed plain error by failing to correct improper statements made by the prosecutor during closing argument.

Defendant first contends that the prosecutor improperly asserted her personal opinion as to the credibility of a witness by arguing:

> I'm going to submit to you that the officers were telling the truth. And he sold it them to him. He didn't even blame it on Mr. Huffman. That's the most likely story he could give you. Wasn't me. Must have been him. He didn't even say that. Don't want to talk about it. Didn't sell drugs. No more.

> So it's going to come down to who you believe. It's not identity. He told you that this photograph right here was him. The person that they went back and identified was him.

Defendant next contends that the prosecutor engaged in uncomplimentary conduct toward defense counsel by arguing:

> Now Miss El-Khouri, and I like her, we're good friends outside the courtroom. It's her job to give you some smoke screens and to say hey, look at the monkey. Hey, look at the pretty bird. Don't look at what's right in front of you.

Defendant next contends that the prosecutor's portrayal of him as a car with faulty brakes improperly led the jury to base its decision on passion and prejudice, rather than the evidence. Defendant specifically cites the following argument:

> [Ms. WEST] Can you go back home knowing you've just put that dangerous car back on the road. Cause that's what you're doing. You're putting Mr. Shipp who is an admitted drug dealer, he sold drugs twice, back on the street. He's dangerous to you.

> Ms. EL-KHOURI: Objection.

> THE COURT: Overruled.

> Ms. WEST: He's dangerous to you. He's dangerous to your family. And he's dangerous to everybody around you, just like that car that you put on the road when you bought it from the salesman.

Finally, defendant contends that because there was no testimony as to what would constitute an individual "hit" of heroin, the prosecutor argued matters outside the record by saying:

> These two baggies, you can assume, is about a hit each. This weighed point 09. Don't look like a lot, a little bit of powder, two hits. Err on the side of caution. We'll say one hit is point 05 of a gram. This is 5.53. Ladies and gentlemen, this is a little more than 111 hits of heroin.

Although defendant did not object at trial, he argues that "due to the inflammatory and highly prejudicial nature of the prosecutor's argument, the trial court should have intervened *ex mero motu* to cure the prejudice . . . ." We disagree.

"Trial counsel are granted wide latitude in the scope of jury argument, and control of closing arguments is in the discretion of the trial court." *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992). "Counsel may argue the facts in evidence together with all reasonable inferences that may be drawn therefrom in presenting counsel's side of the case." *State v. Abraham*, 338 N.C. 315, 338, 451 S.E.2d 131, 143 (1994). "Further, for an inappropriate prosecutorial comment to justify a new trial, it 'must be sufficiently grave that it is prejudicial error.'" *Soyars*, 332 N.C. at 60, 418 S.E.2d at 487-88 (quoting *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977)).

> Where defendant fails to object to an alleged impropriety in the State's argument and so flag the error for the trial court, 'the impropriety . . . must be gross indeed in order for this court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.'

*Abraham*, 338 N.C. at 338, 451 S.E.2d at 143 (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)). "In determining whether the prosecutor's argument was grossly improper, this Court must examine the argument in the context in which it was given and in light of the overall factual circumstances to which it refers." *State v. Tyler*, 346 N.C. 187, 205, 485 S.E.2d 599, 609 (1997), *cert. denied*, 522 U.S. 1001, 139 L. Ed. 2d 411 (1997). "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *State v. Perkins*, 154 N.C. App. 148, 152, 571 S.E.2d 645, 648 (2002).

STATE v. SHIPP

[155 N.C. App. 294 (2002)]

After carefully reviewing the prosecutor's entire argument, paying particular attention to those portions to which defendant now assigns error, we conclude the prosecutor's argument was not so grossly improper as to require the trial judge to intervene *ex mero motu*. Moreover, defendant has not established that the jury probably would have reached a different result. Accordingly, this assignment of error is rejected.

[4] Finally, defendant argues that the trial court improperly denied his motion to sever the trial of the 12 January 2000 offenses. Defendant first argues that the offenses in this case lacked the requisite connection to be joined for trial. We disagree.

"It is well established that a trial court's ruling on the consolidation or severance of cases is discretionary and will not be disturbed absent a showing of abuse of discretion." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985), *rev'd on other grounds*, 323 N.C. 306, 372 S.E.2d 704 (1988). "[T]wo or more offenses may be joined for trial when the offenses are based on the same act or transaction, or a series of acts or transactions connected together or constituting parts of a single scheme or plan." *State v. Manning*, 139 N.C. App. 454, 458, 534 S.E.2d 219, 223 (2000), *disc. review denied*, 353 N.C. 273, 546 S.E.2d 385 (2000). "A defendant is not prejudiced by the joinder of two crimes unless the charges are 'so separate in time and place and so distinct in circumstances as to render the consolidation unjust and prejudicial to defendant.'" *State v. Howie*, 116 N.C. App. 609, 615, 448 S.E.2d 867, 871 (1994) (quoting *State v. Hammond*, 112 N.C. App. 454, 458, 435 S.E.2d 798, 800 (1993), *disc. review denied*, 335 N.C. 562, 441 S.E.2d 126 (1994).

In *State v. Manning*, 139 N.C. App. 454, 534 S.E.2d 219 (2000), defendant was charged in a total of fifteen different drug trafficking offenses, which occurred on four separate dates over six months. Defendant argued that joinder of the offenses was improper because (1) there was no connection between the offenses; and (2) it effectively "strengthen[ed] evidence of defendant's guilt on the weaker counts with evidence from the stronger counts." *Id.* at 460, 534 S.E.2d at 223. This Court rejected defendant's argument, finding that the evidence indicated that "defendant had a common, continual method of transacting drug sales," based on "the same pattern of operation between defendant and the informant . . . during this time." *Id.* at 461, 534 S.E.2d at 224. In reaching this conclusion, the *Manning* court relied on the following factors: (1) Defendant always retrieved the

drugs from a location "on or near his property"; (2) Defendant "would often plan the exchange . . . ahead of time; (3) Defendant "always took cash in payment"; and (4) Defendant "almost always" delivered the drugs in clear plastic bags. *Id.*

Here, defendant was charged with seven drug offenses involving both the possession and sale of heroin. The offenses occurred on three separate dates over the course of less than two months. The evidence further indicated that defendant and his associates frequently patrolled the area of Kohler and Statesville Avenues, an area that was known for heroin trafficking. Their purpose was to approach potential buyers to direct them to defendant's residence on Olando Avenue and sell those buyers heroin. Defendant also arranged drug sales in advance, both through his associates as well as through the use of a numerical pager and pre-designated codes. Moreover, defendant almost always retrieved the heroin from either his residence or from a gray Ford Tempo that he drove and kept on the property of his residence.

We conclude the evidence was sufficient to indicate that the acts or transactions were either connected together or constituted parts of a single scheme or plan to distribute heroin. We hold that the trial court did not abuse its discretion by consolidating all of the charges for trial.

Defendant next contends that severance of the charges was required to promote a fair determination of his guilt or innocence of each offense. Defendant submits that because the officers' reports concerning the 12 January 2000 offense identified the seller only as a "black male," the identity of the perpetrator of that offense was in issue. Defendant contends that joinder was improper because it prevented him from choosing not to testify as to the 12 January 2000 offenses in order to make the State prove his identity as the perpetrator. We disagree.

A defendant fails to show abuse of discretion on the part of the trial judge in joining two offenses for trial where "defendant's only assertion of possible prejudice is that he might have elected to testify in one of the cases and not in the others." *State v. Sutton*, 34 N.C. App. 371, 374, 238 S.E.2d 305, 307 (1977), *disc. review denied*, 294 N.C. 186, 241 S.E.2d 521 (1978). "The defendant seeking to overturn the discretionary ruling must show that the joinder has deprived him of a fair trial." *State v. Porter*, 303 N.C. 680, 688, 281 S.E.2d 377, 383 (1981).

Here, defendant has failed to show either that the trial court abused its discretion or that joinder deprived him of a fair trial. Mulhall testified that on 12 January 2000, he and Marlow purchased heroin from a black male. Following the 12 January 2000 purchase, Mulhall and Marlow identified defendant by viewing a book of police photographs. Mulhall further identified defendant as the seller in open court. Finally, defendant himself admitted that he was the person in the photograph the officers used to identify him. Accordingly, this assignment of error is rejected.

We hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges TYSON and THOMAS concur.