BERGER, Judge.
 

 *122
 
 On May 23, 2017, Anfernee D. Knight ("Defendant") was convicted of first-degree murder; assault with a deadly weapon with intent to kill inflicting serious injury; attempted first-degree murder; and two counts of discharging a weapon into an occupied dwelling. Defendant argues that the trial court erred in: (1) denying Defendant's motion for severance; (2) failing to instruct the jury regarding the jury's use of hearsay statements; and (3) dismissing an impaneled juror. We disagree.
 

 Factual and Procedural Background
 

 This appeal arose from two gang-related shootings on July 23, 2014. The first shooting occurred around 4:30 p.m. near National Grocery in
 
 *123
 
 Wilson ("the National Grocery shooting"). Defendant was sitting in a parked car with Donnell Hill ("Hill"), Demetrius Spells ("Spells"), and Demonte Briggs ("Briggs"). Defendant, Hill, and Spells were members of a local gang. Antonio Pate ("Pate"), a rival gang member, drove past Defendant's parked car and opened fire. According to the testimony of Hill, Spells, and Briggs, Defendant returned fire and struck Pate in his right shoulder as he fled the scene. Defendant, Hills, Spells, and Briggs left the scene without calling the police. Police later recovered six .45-caliber shell casings and eight 9-mm shell casings from the National Grocery shooting scene.
 

 In retaliation for the National Grocery shooting, Defendant and other members of his gang opened fire on a group associated with Pate's gang later that evening at Starmount Circle, an apartment complex ("the Starmount Circle shooting"). In preparing to retaliate, Defendant and Spells borrowed Spell's girlfriend's green Honda, which was described as very loud. Spells drove and Defendant sat in the back seat, still armed with the 9-mm pistol used in the earlier National Grocery shooting. After picking up Hill, the three men met several others associated
 
 *626
 
 with their gang at a local convenience store. After a group discussion, the group split up-three men left in a silver Maxima while Hill, Spells, and Defendant drove away in the loud green Honda. The convenience store's video surveillance recorded the meeting, which was played for the jury.
 

 Around 9:30 p.m., several witnesses at Starmount Circle observed a dark car with a loud muffler and a silver car approach the apartment complex. Shortly thereafter, gunshots were heard. Seven-year-old Kamari Antonio Jones ("Jones") was killed when a bullet from the exchange struck him while he was in bed.
 

 At trial, Spells testified that Defendant exited the green Honda when they arrived at Starmount Circle armed with the 9-mm pistol that he used earlier that day. Defendant met two other men from the silver Maxima; and the three men walked between the homes near Starmount Circle. While they were gone, Spells heard gunshots. When Defendant returned to the green Honda, he did not have the 9-mm pistol. Spells drove them away.
 

 Police later recovered three .45-caliber shell casings and four 9-mm shell casings from the Starmount Circle scene. Testing confirmed the 9-mm shell casings recovered from the National Grocery shooting were fired from the same pistol as the 9-mm used in the Starmount Circle shootings. Defendant's DNA profile also matched the DNA profile obtained from a cigarette located near the Starmount Circle crime scene.
 

 *124
 
 On May 23, 2017, a Wilson County jury found Defendant guilty of one count of first-degree murder; four counts of attempted first-degree murder; three counts of assault with a deadly weapon with intent to kill; one count of assault with a deadly weapon with intent to kill inflicting serious injury; and two counts of discharging a firearm into an occupied dwelling. Defendant was sentenced to life imprisonment without parole for first-degree murder and consecutive sentences of 157 to 201 months for attempted first-degree murder, 73 to 100 months for assault with a deadly weapon with intent to kill inflicting serious injury, and 64 to 89 months each for two counts of discharging a weapon into an occupied dwelling. Judgment was arrested on the remaining counts, which served as the felonies underlying Defendant's first-degree felony murder conviction. Defendant timely appeals, challenging the trial court's denial of his motion to sever, failure to instruct the jury regarding their limited use of hearsay statements, and dismissal of an impaneled juror.
 

 Analysis
 

 I.
 
 Severance
 

 Defendant first alleges the trial court erred by denying his motion to sever the National Grocery case from the Starmount Circle case. Defendant asserts that severance was necessary to protect Defendant's constitutional right to testify in his own defense and to prevent the introduction of certain evidence that was relevant to some, but not all charges. We disagree.
 

 "It is well established that a trial court's ruling on the consolidation or severance of cases is discretionary and will not be disturbed absent a showing of abuse of discretion."
 
 State v. Shipp
 
 ,
 
 155 N.C. App. 294
 
 , 305,
 
 573 S.E.2d 721
 
 , 728 (2002) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Hennis
 
 ,
 
 323 N.C. 279
 
 , 285,
 
 372 S.E.2d 523
 
 , 527 (1988).
 

 Consolidation of offenses for trial is appropriate "when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2017). Our courts generally favor consolidation of offenses for trial because it "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."
 

 *125
 

 State v. Williams
 
 ,
 
 355 N.C. 501
 
 , 531,
 
 565 S.E.2d 609
 
 , 627 (2002) (citation omitted),
 
 *627
 

 cert. denied
 
 ,
 
 537 U.S. 1125
 
 ,
 
 123 S.Ct. 894
 
 ,
 
 154 L.Ed.2d 808
 
 (2003).
 

 To determine whether there was a transactional connection between joined offenses, "[w]e consider the following factors to make this determination: (1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case."
 
 State v. Perry
 
 ,
 
 142 N.C. App. 177
 
 , 181,
 
 541 S.E.2d 746
 
 , 749 (2001) (citation and quotation marks omitted).
 

 Nevertheless, a motion to sever offenses must be granted if, during trial,
 

 it is found necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court must consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.
 

 N.C. Gen. Stat. § 15A-927(b)(2) (2017). "The question before the court on a motion to sever is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial."
 
 State v. Bracey
 
 ,
 
 303 N.C. 112
 
 , 117,
 
 277 S.E.2d 390
 
 , 394 (1981).
 

 Additionally, our Supreme Court and the Supreme Court of the United States have held that severance may be necessary "[i]f such consolidation hinders or deprives the accused of his ability to present his defense."
 
 State v. Davis
 
 ,
 
 289 N.C. 500
 
 , 508,
 
 223 S.E.2d 296
 
 , 301 (citation omitted),
 
 vacated in part on other grounds
 
 ,
 
 429 U.S. 809
 
 ,
 
 97 S.Ct. 47
 
 ,
 
 50 L.Ed.2d 69
 
 (1976) ;
 
 see also
 

 Pointer v. United States
 
 ,
 
 151 U.S. 396
 
 , 403,
 
 14 S.Ct. 410
 
 , 412,
 
 38 L.Ed. 208
 
 , 212 (1894) (recognizing the fundamental principal that a court "must not permit the defendant to be embarrassed in his defence by a multiplicity of charges embraced in one indictment and to be tried by one jury").
 

 However, severance is not required merely because the defendant would have elected to testify against one offense without being compelled to testify against another.
 
 Davis
 
 ,
 
 289 N.C. at 508
 
 ,
 
 223 S.E.2d at 301
 
 (citation omitted);
 
 see also
 

 Shipp
 
 ,
 
 155 N.C. App. at 306
 
 ,
 
 573 S.E.2d at 729
 
 ("A defendant fails to show abuse of discretion on the part of the trial judge in joining two offenses for trial where defendant's only assertion of possible prejudice is that he might have elected to testify in one of the cases and not in the others." (citation and quotation marks omitted) );
 

 *126
 

 State v. Sutton
 
 ,
 
 34 N.C. App. 371
 
 , 374,
 
 238 S.E.2d 305
 
 , 307 (1977),
 
 disc. review denied
 
 ,
 
 294 N.C. 186
 
 ,
 
 241 S.E.2d 521
 
 (1978) (finding the trial court did not abuse its discretion in denying defendant's motion to sever because his "only assertion of possible prejudice is that he might have elected to testify in one of the cases and not in the others").
 

 Here, the transactional connection between the offenses was sufficient for joinder. Each offense arose from a continuous course of violent criminal conduct related to gang rivalries. The evidence tended to show that the Starmount Circle shooting was in retaliation for the earlier National Grocery shooting. The two shootings occurred the same day; the same 9-mm pistol was used in both shootings; and witnesses testified at trial to evidence that applied to both shootings, or testified that they were present at both crime scenes. Thus, joinder was proper.
 

 Additionally, neither the number of offenses nor the complexity of the evidence offered necessitated severance of the offenses for trial. The evidence presented was not unduly complicated or confusing. The jury instructions clearly and carefully separated Defendant's offenses, and the verdict forms unmistakably distinguished the offenses according to the victim's names. Therefore, no showing has been made that severance was necessary to ensure a fair determination by the jury on each charge.
 

 Moreover, we reject Defendant's assertion that severance was necessary to protect Defendant's constitutional right to
 
 choose
 
 to testify against charges arising from either the National Grocery shooting or the Starmount Circle shooting without testifying regarding the other shooting. This is an insufficient argument to warrant severance. As
 
 *628
 
 previously discussed, a trial court does not abuse its discretion by refusing to sever multiple offenses against the same defendant "where defendant's only assertion of possible prejudice is that he might have elected to testify in one of the cases and not in the others."
 
 Shipp
 
 ,
 
 155 N.C. App. at 306
 
 ,
 
 573 S.E.2d at 729
 
 (citation and quotation marks omitted);
 
 see also
 

 Davis
 
 ,
 
 289 N.C. at 508
 
 ,
 
 223 S.E.2d at
 
 301 ;
 
 Sutton
 
 ,
 
 34 N.C. App. at 374
 
 ,
 
 238 S.E.2d at 307
 
 .
 

 Finally, we decline to address the merits of Defendant's argument that the trial court's denial of his motion to sever prevented a fair trial as it allowed the jury to hear testimony regarding Defendant's gang ties and evidence of seven-year-old Jones' murder. Defendant waived appellate review of this issue as he did not raise this argument at trial. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion,
 
 stating the specific grounds for the ruling the party desired
 
 the court to make
 
 *127
 
 if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1) (emphasis added).
 

 Accordingly, the trial court did not abuse its discretion by denying Defendant's motion to sever.
 

 II.
 
 Hearsay Jury Instruction
 

 Defendant argues next that the trial court erred by failing to instruct the jury on their limited use of six hearsay statements for corroborative and impeachment purposes only. While we agree that this omission was error, we find the error harmless.
 

 "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw
 
 ,
 
 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence."
 
 State v. Cameron
 
 ,
 
 284 N.C. 165
 
 , 171,
 
 200 S.E.2d 186
 
 , 191 (1973),
 
 cert. denied
 
 ,
 
 418 U.S. 905
 
 ,
 
 94 S.Ct. 3195
 
 ,
 
 41 L.Ed.2d 1153
 
 (1974). "Failure to instruct upon all substantive or material features of the crime charged is error."
 
 State v. Bogle
 
 ,
 
 324 N.C. 190
 
 , 195,
 
 376 S.E.2d 745
 
 , 748 (1989).
 

 However, "[w]hen a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection."
 
 State v. Lee
 
 ,
 
 370 N.C. 671
 
 , 676,
 
 811 S.E.2d 563
 
 , 567 (2018). "[A] request for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions."
 
 Id
 
 . (quoting
 
 State v. Ross
 
 ,
 
 322 N.C. 261
 
 , 265,
 
 367 S.E.2d 889
 
 , 891 (1988) ). Where the trial court "substantively deviate[s] from the agreed-upon pattern jury instruction, ... this issue [is preserved] for appellate review under N.C.G.S. § 15A-1443(a)."
 

 Id.
 

 Per Section 15A-1443(a), a defendant
 

 is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.
 
 The burden of showing such prejudice under this subsection is upon the defendant.
 
 Prejudice also exists in any instance
 
 *128
 
 in which it is deemed to exist as a matter of law or error is deemed reversible per se.
 

 N.C. Gen. Stat. § 15A-1443(a) (2017) (emphasis added).
 

 Here, at least twice during trial, Defendant specifically requested North Carolina Pattern Jury Instruction 105.20 ("Instruction 105.20"), which limits the jury's permissible reliance on hearsay statements to corroborative and impeachment purposes only. During the charge conference, the parties and trial court further agreed that the jury would be charged with Instruction 105.20. However, the trial court omitted Instruction 105.20 from the final jury charge. We conclude that, by omitting Instruction 105.20 from the final jury charge, the trial court committed error,
 
 *629
 
 which we "review under N.C.G.S. § 15A-1443(a)."
 
 Lee
 
 ,
 
 370 N.C. at 676
 
 ,
 
 811 S.E.2d at 567
 
 . Nevertheless, Defendant has failed to demonstrate that there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a).
 

 The trial court reiterated Instruction 105.20-or a close variation of it-six times to the jury throughout trial. Although the trial court failed to provide Instruction 105.20 during the final jury charge, the jury was sufficiently advised of this instruction throughout relevant portions of the trial.
 

 Moreover, even if the instructions had not been given during the course of the trial, Defendant cannot show prejudice as the record reflects overwhelming evidence of Defendant's guilt. Defendant does not contest the trial testimony of Spells, his fellow gang member. Spells testified that Defendant returned fire on Pate using his 9-mm pistol at the National Grocery shooting. Spells further testified that Defendant was armed with the same 9-mm pistol when he exited Spells' car and opened fire at Starmount Circle later that same evening. Moreover, the physical evidence showed that the 9-mm shell casings found at the National Grocery and Starmount Circle scene matched. Finally, police also recovered a cigarette at the Starmount Circle crime scene which connected Defendant to the shooting. Given the overwhelming evidence of Defendant's guilt, Defendant has failed to demonstrate that but for the trial court's instructional error, there was a reasonable possibility of a different outcome at trial. Thus, Defendant has failed to demonstrate prejudice pursuant to N.C. Gen. Stat. § 15A-1443(a).
 

 III.
 
 Removing Impaneled Juror
 

 Finally, Defendant argues that the trial court erred by dismissing an impaneled juror. We disagree.
 

 Trial
 
 *129
 
 courts' "decisions relating to the competency and service of jurors are not reviewable on appeal absent a showing of abuse of discretion, or some imputed legal error."
 
 State v. Davis
 
 ,
 
 325 N.C. 607
 
 , 628,
 
 386 S.E.2d 418
 
 , 429 (1989) (citation and quotation marks omitted),
 
 cert. denied
 
 ,
 
 496 U.S. 905
 
 ,
 
 110 S.Ct. 2587
 
 ,
 
 110 L.Ed.2d 268
 
 (1990). The abuse of discretion standard applies because "[t]he trial court's discretion in supervising the jury continues beyond jury selection and extends to decisions to excuse a juror and substitute an alternate."
 
 State v. Lovin
 
 ,
 
 339 N.C. 695
 
 , 715-16,
 
 454 S.E.2d 229
 
 , 241 (1995) (citation omitted). Accordingly, "[t]he decision whether to reopen examination of a juror previously accepted by both the State and defendant ... is a matter within the sound discretion of the trial judge."
 
 State v. Freeman
 
 ,
 
 314 N.C. 432
 
 , 437,
 
 333 S.E.2d 743
 
 , 746 (1985) (citation and quotation marks omitted).
 

 "If before final submission of the case to the jury, any juror dies, becomes incapacitated or disqualified, or is discharged for any other reason, an alternate juror becomes a juror, in the order in which selected, and serves in all respects as those selected on the regular trial panel." N.C. Gen. Stat. § 15A-1215(a) (2017). This section "allows the trial court to replace a juror with an alternate juror should the original one become disqualified or be discharged for some reason."
 
 State v. Richardson
 
 ,
 
 341 N.C. 658
 
 , 672-73,
 
 462 S.E.2d 492
 
 , 502 (1995) (citation omitted).
 

 "The test is whether the challenged juror is unable to render a fair and impartial verdict."
 

 Id.
 

 (citation and quotation marks omitted).
 

 The trial court has the opportunity to see and hear the juror on
 
 voir dire
 
 and, having observed the juror's demeanor and made findings as to his credibility, to determine whether the juror can be fair and impartial. For this reason, among others, it is within the trial court's discretion, based on its observation and sound judgment, to determine whether a juror can be fair and impartial.
 

 Id.
 

 (citation omitted). Therefore, "[a]bsent a showing that the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision, the decision must stand."
 

 Id.
 

 (citation omitted).
 

 *630
 
 Here, five days into the trial and after the jury had been impaneled, the State moved for the trial court to inquire into the competency of Juror 7 to render a fair and impartial verdict. The trial court conducted a hearing on the motion in which a 21-year veteran bailiff took the stand and testified that Juror 7 spoke with him during a break on the previous day. Juror 7 had first asked the bailiff "if they could have prayer during the breaks in the jury room." Juror 7 then said that "he felt it
 
 *130
 
 was inappropriate and rude for [the District Attorney] to be pointing at people in the audience while a witness was testifying."
 

 Juror 7 was subsequently questioned about the statements. Juror 7 testified that he did not "remember making any statement pertaining to the case" and agreed that he had not "formed an opinion concerning any of the parties in this case that would affect [him] from being a fair and impartial juror in this matter." Rather than dismiss Juror 7, the trial court gave curative instructions to the jury.
 

 Later that same day, the State played audio from a jailhouse call between Defendant and Defendant's mother, which revealed that the Defendant's mother knew Juror 7. The State renewed its request to dismiss Juror 7. The trial court again asked Juror 7 whether he told "the bailiff yesterday at the lunch break that [he] felt that the District Attorney was rude in that he pointed out certain individuals within the courtroom." In response, Juror 7 admitted that he could "vaguely remember" discussing the jury's security and whether he could pray for the jury because he believed that they were "in jeopardy somehow."
 

 Given this testimony, the trial court made the following findings of fact and conclusions of law:
 

 This matter coming on to be heard and being heard before the undersigned judge presiding on this date, the 19th of May 2017, upon reconsideration of the motion to excuse [Juror 7], ... for expressing an opinion concerning any matter involved in this case, that sworn testimony was taken from the bailiff this morning in which he testified that [Juror 7] mentioned to him that he was, that he thought that the District Attorney was rude at such time he pointed to certain individuals within the courtroom. Upon given a written transcript of the question and answer session with [Juror 7] earlier today, the record reflects upon my question, "have you discussed this case with anyone in any manner outside of this courtroom" that his response was "no, sir." Upon questioning him at the, after lunch break concerning this issue, the witness, [Juror 7], among other things, stated that he was not sure and could not remember.
 

 The Court having heard the testimony of the bailiff and having heard his responses to ensure that the Defendant has a right to a neutral and impartial jury, the Court makes a finding, after these findings of fact,
 
 *131
 
 makes conclusions of law that [Juror 7] made, expressed an opinion about this case in disregard to the Court's instructions. Further, that it is within the sound discretion of the Court concerning jury conduct based upon the foregoing findings of fact and conclusions of law, the Court finds that an opinion was expressed concerning this case in violation of the Court's instructions, therefore, [Juror 7] has been excused by the Court.
 

 Based on the trial court's investigation and findings that Juror 7 provided different response to the same question during two separate hearings and ignored the trial court's instructions, the trial court dismissed Juror 7. Defendant has failed to demonstrate that the trial court's decision to dismiss Juror 7 "was so arbitrary that it could not have been the result of a reasoned decision."
 
 Richardson
 
 ,
 
 341 N.C. at 673
 
 ,
 
 462 S.E.2d at 502
 
 (citation omitted). Therefore, the trial court did not abuse its discretion by dismissing Juror 7.
 

 Conclusion
 

 The trial court did not abuse its discretion by denying Defendant's motion for severance or dismissing Juror 7. Although omitting the requested instruction during the final jury charge was erroneous, this error was harmless.
 

 *631
 
 Accordingly, Defendant received a fair trial, free from prejudicial error.
 

 NO ERROR.
 

 Judges DIETZ and TYSON concur.