STATE OF NORTH CAROLINA
v.
REGINALD DEWAYNE JEFFRIES, Defendant.
No. COA07-1049
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Barbara A. Shaw, for the State.
Greene & Wilson, P.A., by Thomas Reston Wilson, for defendant-appellant.
GEER, Judge.
Defendant Reginald Dewayne Jeffries appeals from his conviction of possession of a controlled substance with intent to sell and deliver. In the course of arresting defendant, officers searched his pockets and seized money they found. Subsequently, but prior to defendant's indictment, the North Carolina Department of Revenue ("DOR") took possession of the money pursuant to a tax warrant, and defendant's counsel never had an opportunity to examine the money. While defendant argues on appeal that this action of the State constituted a discovery violation, we hold that defendant has failed to demonstrate prejudice even assuming a discovery violation occurred.

Facts
The State's evidence tended to show the following facts. On 5 May 2006, at 2:16 a.m., Officer Matthew Autry of the Asheville Police Department and Deputy Brian Styles of the Buncombe County Sheriff's Department went to Room 26 of the In-Town Motor Lodge with a woman named Christina Oliver. A man named Ron Lynch answered the door. Inside the room, Tabitha Oliphant was lying on a bed with defendant. When Autry asked defendant if he had the keys to Oliver's car, defendant sat up, revealing a bag touching his right hip. Styles told defendant not to move and reached across the bed to grab the clear plastic bag containing what appeared to be crack cocaine. Autry then assisted defendant up from the bed, handcuffed him, and searched him, finding $772.00 in his right front pants pocket.
A forensic chemist with the North Carolina State Bureau of Investigation ultimately determined that the plastic bag contained 52 rocks of crack cocaine. Oliphant testified at trial that she was using drugs in the hotel room the day of the arrest. She stated that defendant had crack cocaine in his possession that day although defendant does not himself use crack cocaine. She had known defendant for one and a half to two years, and defendant had sold crack cocaine to her in the past.
The money found in defendant's pocket was initially stored in the Property Control Room at the Asheville Police Department. On 25 August 2006, a DOR agent presented the Police Department with a tax warrant for the money. On 11 October 2006, prior to defendant's indictment, a DOR agent confiscated the money pursuant to the tax warrant.
On 6 November 2006, defendant was indicted for possession with intent to sell and deliver cocaine. Subsequently, in December 2006, defendant's trial counsel asked to view the seized money, but learned the money had already been removed by DOR. Neither photographs nor photocopies had been made of the bills. In addition, no one had recorded the bills' precise denominations or the serial numbers. Officer Autry testified at trial only that there was a wide assortment of denominations, including a number of twenties and fives.
Defendant presented no evidence at trial. The jury convicted him of possession with intent to sell and deliver crack cocaine. Following the conviction, the jury was asked to determine whether an aggravating factor existed: that defendant committed the offense while on pretrial release on another charge. The jury found the aggravating factor, and the trial judge found one mitigating factor: that defendant had community support. The trial judge concluded that the aggravating factor outweighed the mitigating factor and imposed an aggravated-range sentence of 13 to 16 months imprisonment. Defendant timely appealed to this Court.

I
Defendant first challenges the admission of Oliphant's testimony that defendant had sold her crack cocaine on prior occasions. The trial court admitted the testimony under Rule 404(b) of the Rules of Evidence as evidence of defendant's intent. Once a trial court determines that evidence is properly admissible under Rule 404(b), the evidence is still subject to exclusion under Rule 403. State v. Lanier, 165 N.C. App. 337, 344, 598 S.E.2d 596, 601 ("Even if evidence is admissible according to Rule 404(b), it must also be scrutinized under Rule 403. . . ."), disc. review denied, 359 N.C. 195, 608 S.E.2d 59 (2004). In this appeal, defendant does not contest the admissibility of the evidence under Rule 404(b), but rather limits his argument to his contention that the prejudicial effect of Oliphant's testimony substantially outweighed its probative value and, therefore, the testimony should have been excluded under Rule 403.
Oliphant testified that defendant had cocaine in his possession on the day of the arrest, but acknowledged that defendant does not use crack cocaine. The State then asked: "What do you know Mr. Jeffries to do with the crack cocaine like he had on May the 5th, 2006?" Over defendant's objection, Oliphant responded: "Sells it." Subsequently, the State asked Oliphant: "And if Mr. Jeffries gave you crack cocaine, did you give him money for it or some other means?" The trial court overruled defendant's objection, and Oliphant testified that she would pay defendant for the drugs with cash.
We review a trial court's decision under Rule 403 for abuse of discretion. State v. Morgan, 329 N.C. 654, 661, 406 S.E.2d 833, 837 (1991) ("Balancing the probative value of this evidence against its potential for prejudice was within the discretion of the trial court."). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." Id.
Defendant does not dispute that the evidence of prior drug sales between Oliphant and defendant was relevant to whether defendant had the required intent to sell or deliver the cocaine. See, e.g., id. (evidence of four other sales of cocaine within a few months of sale in question admissible to show intent and motive); State v. Montford, 137 N.C. App. 495, 501, 529 S.E.2d 247, 252 (evidence of prior cocaine sale between defendant and informant "was admissible to prove intent"), cert. denied, 353 N.C. 275, 546S.E.2d 386 (2000). Defendant argues, however, that this evidence had little probative value as to defendant's intent in light of other evidence presented at trial.
According to defendant, the significant amount of cash and crack cocaine found in the motel room made Oliphant's testimony redundant. To the contrary, Oliphant's testimony explaining defendant's reason for possessing cocaine when he did not use it himself was more persuasive evidence of intent than the possession of cash (without details as to the denominations) and the presence of drugs in a room also occupied by others.
While defendant contends that "it was extremely prejudicial" evidence because "it otherwise allowed the jury to make the impermissible inference that if Mr. Jefferies sold drugs in the past to this woman for money or some other exchange, he surely did it this time," he disregards the trial court's limiting instruction. The trial court instructed the jury immediately after the testimony:
Mr. Jeffries is charged with the possession with the intent to sell or deliver cocaine. This evidence that you just heard is to be used only to show the intent of Mr. Jeffries if you believe this evidence. What I mean is you cannot use this evidence to say to yourself, "I heard that he did this in the past, so he must be guilty of this now." The only thing you can use this evidence for is if you do find  and, of course, that's one of the main issues in the trial  beyond a reasonable doubt by the evidence presented that Mr. Jeffries did possess this controlled substance. If you find that, then you may use this evidence to find what intent he had, if any, while he possessed the substance.
Defendant has failed to show, given the evidence and the instruction, that the trial court abused its discretion in concluding that the probative value of the evidence on the "intent" issue out weighed any prejudicial effect as to the "possession" issue. We, therefore, overrule this assignment of error.

II
Defendant next contends that the trial court erred in denying his motion to suppress evidence of the money found in defendant's pocket. Defendant asserts that DOR's seizure of the money before he had an opportunity for discovery violated N.C. Gen. Stat. §§ 15-11.1(a), 15A-501(6), and 15A-903 (2007). We agree with the trial court, however, that even assuming arguendo that there was a discovery violation, defendant has not demonstrated prejudice from his counsel's inability to examine the currency seized.
Defendant suggests he was prejudiced because he was "charged with possession with intent to sell and distribute crack cocaine, and at trial the state [sought] to prove the intent element by proving the denominations of the money found on Defendant. . . ." While in some drug possession cases, the State argues intent to sell based on the defendant's possessing bags of $20.00 rocks of cocaine along with a number of $20.00 bills, that theory was not the State's focus in this case.
In arguing intent, the State did not rely on the denominations of the bills, but instead pointed to Oliphant's testimony that defendant gave her crack cocaine that day; that defendant did not use cocaine, but rather sold it; and that defendant had sold her cocaine in the past. This testimony, together with the large amount of cocaine (valued in excess of $2,000) and the total amount of money in defendant's pocket, strongly suggested that defendant possessed the cocaine with an intent to sell it.
Defendant has not explained how, in light of this evidence, knowing the precise denominations would have better allowed him to persuade the jury that he lacked the necessary intent. The trial court, therefore, did not err in denying defendant's motion to suppress. See State v. Davis, 160 N.C. App. 693, 695-96, 586 S.E.2d 804, 806 (2003) ("The absence of the actual bills neither inhibited the jury, nor prejudiced defendant in this case. The jury got to see the whole picture by listening to the witnesses on each side. More importantly, through testimony, the jury considered the evidence that defendant claims would exonerate him and rejected it. Therefore, the failure to produce the actual money did not prejudice defendant."); State v. Manning, 139 N.C. App. 454, 466, 534 S.E.2d 219, 227 (2000) (holding that failure to allow discovery of actual currency, serial number list, or photocopies of bills was not prejudicial "due to the overwhelming evidence on the charges stemming from the drug buy on 6 May 1997, including a recording of the drug buy obtained from the wire-tapped informant, testimony of the informant, surveillance of the area by officers, and seizure of defendant just after the transaction"), aff'd per curiam, 353 N.C. 449, 549 S.E.2d 211 (2001).
We are, nonetheless, concerned about a practice that effectively destroys evidence prior to a defendant's being indicted and the right to discovery having attached. While, in this case, we found no prejudice, the situation may be otherwise in future prosecutions, especially when, as here, no photocopies or other record has been kept of the money.

III
Defendant next contends that the State presented insufficient evidence of defendant's identity to support submission to the jury of the aggravating factor that defendant committed the crime while on pretrial release. We disagree.
When ruling on a motion to dismiss for insufficiency of the evidence, "the trial court determines whether substantial evidence exists for each essential element of the offense charged, and whether defendant is the perpetrator of the offense." State v. Gay, 151 N.C. App. 530, 532, 566 S.E.2d 121, 123 (2002), disc.review denied, 356 N.C. 685, 578 S.E.2d 315 (2003). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). "'In ruling on a motion to dismiss, the trial court must view all of the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence.'" Id. (quoting State v. McAllister, 138 N.C. App. 252, 259, 530 S.E.2d 859, 864, appeal dismissed, 352 N.C. 681, 545 S.E.2d 724 (2000)).
At trial, after the jury returned its guilty verdict, a hearing was conducted on the alleged aggravating factor. The State called as a witness Monica Young, deputy clerk with the Buncombe County Criminal Superior Court records office. She testified about her job responsibilities as follows:
Q. Is one of your jobs to keep current and pending criminal files?
A. Yes.
Q. And "current criminal pending files" means charges pending against someone?
A. Yes.
Q. And within someone's pending criminal charge are there certain documents kept that show conditions of release and a release order?
A. Yes, that is part of the file.
Q. And describe, if you know, the process when someone's charged, what's important about the conditions of release or a release order.
A. Generally release orders are in the files. They show when the person's picked up. They can show when they were released from jail, changes in bonds, conditions that are changed as far as conditions for the case. Just any change like that is on a release order.
Young then identified a release order for Reginald Dewayne Jeffries dated 13 March 2006, indicating his release on a pending drug charge. She testified further that this same charge (identified by file number) also appeared on a record listing the pending charges as of that date for Reggie D. Jeffries.
Defendant argues that there was insufficient evidence of identity because Young testified regarding "Reginald Jefferies," the indictment referenced "Reginald Dewayne Jeffries, Jr.," and defendant's legal name is Reggie Dewayne Jeffries. Defendant contends that the evidence was "per se insufficient" and that the State "must provide great [sic] indicia of evidence than just that of the Superior Court criminal clerk's review of the file to determine a defendant's release status on the date of offense." Defendant, however, cites no authority to support his contention.
We conclude that when the evidence is viewed in the light most favorable to the State, a reasonable jury could find that defendant committed the offense while on pretrial release. Defendant's arguments regarding his name presented questions for the jury to resolve.

IV
Finally, defendant contends that the trial court erred in instructing the jury in connection with the aggravating factor by failing to define "reasonable doubt." Defendant acknowledges that the trial judge defined "reasonable doubt" during the guilt/innocence phase of the trial, but asserts that the trial court was obligated to repeat that definition during the aggravating factor phase.
During the first stage of the trial, the trial judge gave the following instruction on "reasonable doubt":
The State must prove to you that the defendant's guilty beyond a reasonable doubt. A reasonable doubt is a doubt based on reason and common sense arising out of some or all the evidence that has been presented, or lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.
The jury left at 11:01 a.m. to deliberate, returned with a guilty verdict at 12:21 p.m., and left for lunch at 12:33 p.m. The jury returned to hear evidence on the aggravating factor at 2:06 p.m. In instructing the jury regarding the aggravating factor, the trial judge stated: "The burden of proving this aggravating factor is on the State. They have to prove this beyond a reasonable doubt. There's no burden at all on the defendant. It's like an earlier portion of the trial that we had. The rules are, for the most part, the same."
In the course of his instructions to the jury, the trial judge repeatedly referred back to the instructions he had given at the conclusion of the guilt/innocence phase. Further, the verdict sheet used by the jury asked: "Do you unanimously find from the evidence, beyond a reasonable doubt, the existence of the following aggravating factor: that the defendant committed the offense while on pretrial release on another charge[?]"
Once the jury left the courtroom at 2:27 p.m., defense counsel objected to the trial judge's failure to give "the full definition and jury instruction of beyond a reasonable doubt." The trial judge noted that the definition was given during the trial and stated: "In my discretion, considering how long this trial has gone on and considering the complexities of the main trial and the issue we have remaining, I would decline to give that correction."
Our Supreme Court has held that "[t]he trial court has the duty to define the term `reasonable doubt' when requested to give such an instruction to the jury." State v. Montgomery, 331 N.C. 559, 570, 417 S.E.2d 742, 748 (1992). Neither defendant nor the State have cited any case specifically addressing whether a trial court is required to re-instruct on the definition of "reasonable doubt" in the sentencing phase of a non-capital case.
We need not resolve this question since, even assuming arguendo, that the trial judge should have repeated the definition of "reasonable doubt" in the aggravating factor hearing, we hold defendant has failed to show that he was prejudiced by its omission. Given (1) the short time frame between the trial judge's instruction in the first phase regarding the definition of "reasonable doubt" and (2) the trial judge's repeated reference, in the aggravating factor instructions, to the instructions during the first phase, we do not believe that there is a reasonable possibility that the jury would have reached a different result had the definition been repeated. See N.C. Gen. Stat. § 15A-1443(a) (2007) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."). The jury was properly instructed that the "reasonable doubt" standard applied and had only shortly before been given a definition of "reasonable doubt."
We, therefore, overrule this assignment of error. We note, however, that the better practice would have been, upon defense counsel's request, to instruct the jury again in the aggravating factor hearing regarding the definition of "reasonable doubt."
No error.
Judges TYSON and STROUD concur.
Report per Rule 30(e).